JOHN L. HOOD *vs.* CHARLES L. HARTSHORN, administrator.

In a lease of land it was stipulated that at the end of the term buildings erected on the land by the lessee should be appraised by three disinterested men, one to be chosen by him, one by the lessor, and the third by the two others, and the lessor should "purchase said buildings of said lessee at the price so set by said appraisers."    *Held,* that when the term expired the buildings passed to the lessor under an obligation to pay for them which was not wholly dependent on the making of an appraisement in the manner stipulated; but that to maintain an action for their value the lessee must show that he did all that was reasonably in his power to procure such an appraisement.    *Held, also,* that the failure of one board of appraisers to agree on a valuation, or their acting in such a manner as to disqualify themselves, was not conclusive as matter of law that the lessee had done so; and that evidence that, after there had been such a disagreement and one of the appraisers had twice refused to serve longer, the lessor assented to a proposal of the lessee that the appraisers should nevertheless come together again, was material for the consideration of the jury on that question.

CONTRACT against the administrator of the estate of Charles Paine, deceased, on the following covenant in a lease, dated February 20, 1862, by Paine to the plaintiff, of real estate in Worcester, (including two buildings erected by the plaintiff,) for five years from August 1, 1862 : " It is agreed by and between the parties, that at the expiration of this lease the buildings which have been heretofore erected by the lessee on the premises shall be appraised by three disinterested men, one to be chosen by the lessor, one by the lessee, and a third by said two appraisers thus chosen ; and said Paine agrees to purchase said buildings of said Hood at the price so set by said appraisers." The declaration set forth this covenant, and alleged that the plaintiff and the defendant each chose an appraiser, and the two appraisers a third, in accordance therewith, but that the appraisers neglected and refused to set a price for the buildings ; that the plaintiff proposed to the defendant to choose other appraisers in accordance with the covenant, and otherwise did all in his power to procure such an appraisement ; but that the defendant refused to join in choosing other appraisers, and sold the buildings and converted the proceeds to the benefit of the estate of his intestate ; " whereby the defendant, as such administrator, became liable to pay to the plaintiff such a sum for said buildings as was reasonable, to wit, the sum of $4000, yet the defendant refused to pay the same." Writ dated March 31, 1868. Answer, a general denial ; and an allegation that the plaintiff had not done the things which it was stipulated in the covenant that he should do, while the defendant had done all that was incumbent on his intestate.

At the trial, before *Colt*, J., the plaintiff introduced the lease in evidence, and offered evidence, which was not controverted, that " a few months before August 1, 1867, he applied to the defendant to arrange the matters growing out of the agreement declared on, who referred him to James H. Wall as his agent with full powers ; that the plaintiff named Lewis Lewisson as his referee under the contract, and Benjamin E. Hutchinson was named in behalf of the defendant, and the two referees so named agreed on Gerry Hutchinson as the third referee ; that

thereafter said referees met, and after a hearing failed to agree; and that Lewisson, sometime before August 1, refused to proceed any further in the matter." The plaintiff testified that he then called on Wall to appoint a new appraiser, and Wall replied to the effect that he himself was satisfied with those already chosen, but that the plaintiff might choose another if he wished to, and the plaintiff answed that he did not think that would be proper, or that he could get another to serve with the two Hutchinsons, for such other would then have no voice in the choice of a third, to which Wall rejoined that the plaintiff might put Lewisson in again; that the plaintiff then saw Lewisson on August 2, 1867, and persuaded him to consent to serve again, and gave notice to Wall accordingly, who answered that " the time had gone by and he should not do anything further about it." Lewisson testified that after agreeing to serve the second time he asked Benjamin E. Hutchinson to meet him for the purpose of the appraisement, but " that they did not act again, and he then gave the plaintiff notice that he should not act further, and after that never said anything different; that he was not sure whether this was before or after August 1, but it was before the plaintiff left Worcester," which it appeared was about September 1. William A. Williams testified further for the plaintiff that, " being clothed by the plaintiff with full powers to act for him in the whole matter, after the plaintiff left Worcester, he called on Wall and told him he was fully authorized to adjust this matter; they were willing the old referees should settle it or would choose new ones; that Wall replied he had done all that the defendant authorized him to do, and should do nothing more; that the witness subsequently called on the defendant and proposed to him to allow the old referees to come together again and adjust the matter; that the defendant said the proposition was fair enough and he would consult Wall; and that the defendant subsequently saw him and said he would not consent and could do nothing more about it."

The defendant offered to show that the two Hutchinsons, after a hearing of the parties by the three appraisers, agreed on a valuation of the buildings at the sum of $262.50, and made

written award thereof; also " to show all proceedings necessary
to give validity to said award, except the consent of Lewisson
to the same; and further, that the statement of the interviews
with Wall and the defendant made by Williams was so far
incorrect, that at those interviews Wall and the defendant did
not say they would do nothing further, but on the contrary each
said he had no objection to the proposal then made; and that at
the time of Williams's alleged conversation with the defendant
the fact of the previous award and of Lewisson's second refusal
was known to both." But the judge ruled " that the evidence
offered by the defendant was immaterial, and that on the uncon-
troverted facts the plaintiff was entitled to recover," and reported
the case for revision by the full court, it being agreed that the
value of the buildings should be determined by an assessor, if
judgment should be ordered for the plaintiff.

*G. F. Hoar,* for the defendant.

*F. H. Dewey & W. A. Williams,* for the plaintiff.

CHAPMAN, C. J. The lease bears date February 20, 1862,
and is for the term of five years from the first day of August
then next. It contains the following clause, on which the rights
of the parties in this action depend: "And it is agreed by and
between the parties, that at the expiration of this lease the
buildings which have been heretofore erected by the lessee on
the premises shall be appraised by three disinterested men, one
to be chosen by the lessor, one by the lessee, and the third by
the two appraisers thus chosen; and said Paine agrees to pur-
chase said buildings of said Hood at the price so set by said
appraisers." This clause is to be construed with reference to its
subject matter. By its terms, the appraisement was not to be
made till the expiration of the lease. This would give no time
for the removal of the buildings in case the appraisers should
fail to agree; and by operation of law they would become the
property of the lessor without any conveyance or transfer. It
would be unreasonable to construe the agreement so as to ren
der the obligation of the lessee to pay for them entirely depend-
ent upon the making of an appraisement. The appraisement is
to be regarded as a mere method of ascertaining the price to be

paid for them. Yet the stipulation concerning the appraisement is not void. It gives the lessor certain rights which are preliminary to the rights of the lessee to maintain an action for the price. It binds the lessee to do all that was reasonably in his power to procure the stipulated appraisement. It is unlike the agreement in *Phippen* v. *Stickney*, 3 Met. 384, in which the referees were named, and when those individuals failed to make an appraisement the stipulated method of ascertaining the value wholly failed, there being no obligation resting on either party to appoint other appraisers. It then became proper to refer the matter to a jury. This agreement is also unlike the agreement in *Mc Carren* v. *McNulty*, 7 Gray, 139, in which the question whether the bookcase should be accepted was referred to the president of the association, whose decision was final without regard to the validity of the reasons he might give for it. In the present case, no appraisers are named, but each party is to act in their selection. If then one set of appraisers fail to agree, or if they act in such a manner as to render them obviously unfit to decide the matter, another appointment should be made; and a fair interpretation of the contract requires the lessee to use all reasonable efforts in his power in order to obtain suitable appraisers who will agree. He must continue to act till he puts the lessor in the wrong, or else makes it manifest that no suitable persons can be obtained to do the service within a reasonable time, which can hardly be supposed.

Whether the plaintiff has thus fulfilled the contract on his part is a question of fact for the jury; and the court are of opinion that the evidence offered by the defendant is material on this point. If he has fulfilled the contract, he is entitled to recover the value of the buildings, to be assessed by the jury, or by an assessor if the parties so agree. If he has failed to fulfil it, he is not entitled to maintain this action, but must proceed according to his contract, and make all reasonable efforts to procure an appraisement, which is all that a reasonable construction of his contract requires of him as preliminary to bringing an action for the price.

The question whether an arbitration clause in a contract is

valid has often arisen, and in some of its aspects presents **great** difficulties. But the present case comes within the principle stated by Coleridge, J., in *Avery* v. *Scott*, 8 Exch. 500, that it is not unlawful for parties to agree to impose a condition precedent with respect to the mode of settling the amount of damage, or the time of paying it, or any matters of that kind that do not go to the root of the action. See also *Elliott* v. *Royal Exchange Assurance Co.* Law Rep. 2 Exch. 243. There is no policy of the law in this Commonwealth adverse to the settlement of controversies or questions between parties by arbitration ; and contracts to that effect are enforced so far as they can be consistently with the principles of law. Judicial tribunals are provided by the government to enable parties to enforce their rights when other means fail, but not to hinder them from adjusting their differences themselves, or by agents of their own selection. In cases like that of *Rowe* v. *Williams*, 97 Mass. 163, there being no condition precedent to the right to recover, a mere agreement to refer, which either party may revoke before the arbitrators execute the power, is not a bar to an action, and does not oust the court of its jurisdiction.

*New trial ordered.*