JOHN L. EMMONS, guardian, *vs.* DANIEL SCUDDER & others.

Suffolk. March 10. — June 27, 1874. COLT & ENDICOTT, JJ., absent.

If a tenant after the expiration of his lease continues in possession under a new agreement, express or implied, for a lease, he becomes a tenant at will until the lease is executed; and evidence that the tenant underlet part of the building which was not let to him by the former lease but was included in the new agreement, and that he received rent therefor, and paid rent at the rate stipulated under the new agreement, is evidence of an entry by him under the new agreement, even though the rent was paid under protest; and the fact that the landlord agreed to repair the building and failed to do so would not, after an entry by the tenant, justify him in changing the character of the tenancy from a tenancy at will to one at sufferance.

A threat by a lessor to eject a tenant unless he will pay a sum demanded as rent is not such duress as will enable the tenant to recover back the rent, although a greater sum is demanded than is due, and the tenant pays it under protest.

CONTRACT on an account annexed for rent of store No. 54 and 56 Broad Street, Boston, from October 1, 1869, to January 1, 1870, and for the taxes assessed by the city of Boston on said store, May 1, 1869.

At the trial in the Superior Court before *Putnam,* J., the jury found a verdict for the plaintiff, and the defendants alleged exceptions in substance as follows:

It appeared in evidence that the store in question was formerly owned by George Odin, who died in 1866, and that on his decease it descended to his niece, Harriet L. Odin, a minor, of whom the plaintiff was duly appointed guardian.

On July 1, 1864, Odin leased to the defendants, for the period of five years, the lower floor of the premises and cellar under the same, numbered 56 Broad Street, for the rent of $500 per year, the lessees being exempt from paying taxes, and restricted from underletting. The lessees took possession of said premises, and remained therein during the term of said lease, and afterwards to October 23.

During the term of said lease and subsequently, the defendants occupied only the first floor and cellar, numbered 56 Broad Street,

the premises above forming part of the same building, but numbered 54 Broad Street, were occupied by D. Leland & Co. as tenants at will of said guardian, until July 1, 1869; and after said July 1, in the manner hereinafter stated.

The premises, in the spring of 1869, were very much out of repair and in bad condition, especially that portion occupied by Leland & Co.

The defendants offered evidence tending to show, that in June, 1869, or some time before the expiration of the written lease to them, that firm and Leland & Co. both had a conversation with the plaintiff in regard to a renewal of their tenancies; that he said he preferred but one tenant of the whole estate, and finally agreed with the defendants that he would put said premises, from top to bottom, in good repair, so that the defendants and Leland & Co. should be pleased therewith, and that he would give to the defendants a written lease of the whole of the premises for the period of five years, from July 1, 1869, (the expiration of the former lease), for the rent of $1,600 per year, and all taxes, and with a right to underlet, to which agreement said firm assented. The evidence was conflicting as to whether the agreement of the plaintiff was to repair the whole building, or only the portion occupied by the defendants; but, with this exception, it was admitted that such an agreement was made.

After making said agreement, the plaintiff notified Leland & Co. that he had agreed to lease said store to the defendants; and Leland & Co. thereupon, and before July 1, when their rent became due, agreed with the defendants that they would remain in store No. 54 as their tenants and at an advanced rent payable monthly, the defendants agreeing that the premises should be put in repair; and it was in evidence that Leland & Co. remained in the premises, No. 54 Broad Street, after July 1, and paid the defendants one or two months rent therefor, at the advanced rate, but finally refused to pay rent after that because repairs had not been made. The plaintiff after July 1 had never demanded rent of them, or treated them as his tenants, nor did Leland & Co. consider themselves as his tenants.

On or about July 1, 1869, the plaintiff left with the defendants a written lease according to the terms of said agreement, excepting that the clause prohibiting underletting was not erased. Nothing

was said in it about repairs. One of the members of that firm gave the lease a hasty examination, and laid it one side; but neither he nor his firm requested the plaintiff to erase therefrom the printed clause restricting them from underletting, nor ever notified him that said lease was in any way unsatisfactory to them. The lease was never executed. It was in evidence that the plaintiff made repairs and alterations in the lower store, numbered 56 Broad Street, to the satisfaction of the defendants, which were completed about August 1; but, though several times requested by the defendants after July 1, he refused to make repairs on the upper store, contending that he had never agreed to do so.

There was evidence tending to show that on or about October 2, 1869, the plaintiff demanded $400 of the defendants, it being for one quarter's rent of the whole estate at the advanced rate, which they refused to pay, because the plaintiff had not repaired the premises occupied by Leland & Co. During the conversation between them, the plaintiff said that he had been offered $1,800 per year for said premises, and that they, the defendants could not remain in said premises, if they did not pay said rent; and thereupon they paid said rent under protest, and continued to occupy the store until October 23, 1869, when they left, having given notice to the plaintiff of their intention so to do on October 18.

The defendants requested the presiding judge to instruct the jury, that if the plaintiff agreed to repair all of said premises, and to give them a lease in writing for a term of years, and failed to keep said agreement in any respect, either failing to repair, or to give them a written lease with the right to underlet, the defendants would not be liable to pay rent after July 1, 1869 ; that if they held over after the expiration of said old written lease, they were tenants at sufferance, of store No. 56 Broad Street, at the old rate of $500 per year, and were not bound to give notice in writing of their intention to terminate said tenancy; that under the facts disclosed in the case, the defendants were only liable for rent of store No. 56, at the rate of $500, for the period of twenty-three days from October 1.

The court, instead of the instructions asked for, gave, upon those points, the following instructions to the jury : " If no new

agreement was made, the defendants would be considered as holding over and would be merely tenants at sufferance, having the right to leave as they did, October 23, 1869, and paying only *pro rata* rent from July 1, 1869, to October 23, 1869, at the rate of the old lease, $500 per year.

" As the plaintiff contends they were tenants at will, he must satisfy the jury that there was some new agreement, expressed or implied, that the defendants should take the whole premises, at the rate of $1,600 per year, with privilege to underlet, and that the defendants entered under that agreement, or continued to remain there, after July 1, 1869, under said agreement; that, as the lease was not executed, if they entered under the agreement as contained in the lease, they would be afterwards tenants at will, so long as the lease remained unexecuted, and they would be obliged to pay rent at the rate of $400 per quarter, and would have no right to leave as they did, in the midst of the quarter, paying rent only to that time; that the evidence that, in point of fact, they did underlet, and accept rent of their tenant, for one or two months, and the other evidence in the case was for the consideration of the jury as bearing on the question whether they entered or remained in possession under said new agreement; that if they entered under this agreement, even if the jury should find that the agreement was to repair the whole building, the failure of the landlord to do so would not justify them in changing the character of the tenancy, from that of a tenancy at will to a tenancy at sufferance; and, though they left in the middle of the quarter, they would be obliged to pay the full quarter's rent; if they chose to enter, under the terms of the new lease, before the repairs agreed upon were all made, they must look to the landlord for indemnity upon his promise, if they were not made."

*N. C. Berry*, (*J. W. Hubbard* with him,) for Scudder and others.
*W. P. Blake*, for Emmons.

DEVENS, J.   The defendants contend that they were tenants at sufferance only, and as such had a right to quit the premises occupied by them when they saw fit, and that they were liable during the time that they were thus tenants at sufferance only for a *pro rata* rent to be determined by reference to the written lease under which they first entered upon the premises.   Upon

this point, the instruction of the judge who presided at the trial was, that in order that they should become tenants at will, and therefore not entitled to quit, except upon notice, the jury must be satisfied that they remained under some new agreement, either expressed or implied, and entered upon the possession of the whole premises which were embraced in the new agreement, as it was alleged, and of which their original tenement was a part. That there was an agreement for a lease of the whole premises at the termination of the defendants' original lease was admitted, and also that the plaintiff received rent after the termination of the original lease from the defendants of the part of the premises not included therein, but which were to be included in the new lease contemplated; and the only questions between the parties were whether there was an entry or remaining in possession under the new agreement, and whether it was agreed by the plaintiff that he should repair the whole premises, or only that portion which, under the original lease, was held by the defendants. The instruction given was in conformity with well settled principles of law. When a party remains in possession of premises at the expiration of his term, and no new agreement is made, he becomes a tenant at sufferance. By the common law he was not liable for rent as such, although liable for the fair value of the premises in an action for use and occupation, and the landlord was entitled to resume possession, or the tenant to quit the premises, at any time. *Merrill* v. *Bullock*, 105 Mass. 486. By our statute he is made liable for rent, and the provisions of the lease under which he entered may be used in evidence to prove the amount of rent due from him. Gen. Sts. *c.* 90, § 26. When, however, there is a new contract, either express or which may be fairly implied from the acts of the parties, and the tenant occupies under it, his tenancy becomes a tenancy at will, and can only be terminated by the landlord or tenant in the mode prescribed for that class of estates. In *Delano* v. *Montague*, 4 Cush. 42, where a tenant was in under a lease and a parol agreement was made between him and the landlord for a lease of the premises for a year additional on the same terms as the written lease, but, before the written lease had expired, the tenant notified the landlord that he should not remain under the proposed agreement or comply with it, and subsequently remained after

expiration of his lease, it was held that he was a tenant at sufferance only; but the court declined to decide whether if the notice of his abandonment of the parol agreement had not been given previous to the expiration of the written lease he would or would not have been a tenant at will. In *Edwards* v. *Hale*, 9 Allen, 462, it is said, that while a mere continuance in possession under the old lease makes a party a tenant at sufferance, if there is a new contract shown, either express or inferrible from the dealings of the parties, the estate becomes one at will.

In the present case, rent was paid by the defendants under the new agreement, and received by them from their sub-tenants, and although this payment was under protest, yet it was in a legal sense a voluntary payment. Even if they were threatened with being ejected, it was not such duress as entitled them to make the payment and afterwards to seek to recover it back or escape from any of its other legal consequences. When a party has no chance to be heard, as when there is a warrant of distress against his property, he may pay under protest, and afterwards litigate the question at issue between himself and the party who has thus extorted money from him; but the defendants had, at the time of payment of the rent, the opportunity to litigate the question between them and the plaintiff, and if no such sum as that claimed was due, they could not have been ousted for non-payment. Rent having been demanded and received by the landlord on the basis of the new agreement for the whole premises, he could not afterwards treat the defendants as tenants at sufferance of the portion of the premises they had originally held; and, having the rights, they are under the liabilities of tenants at will, and are not entitled to quit without notice.

The defendants further contend that the fact that the lease was never executed, for which the agreement was made, entitles them to be considered as tenants at sufferance only. But if they continued in possession of the premises originally held, and took possession of the other portion of the premises, which the jury, following the instructions of the court, must have found that they did, under the new agreement, their tenancy was one which could only have existed under that parol agreement. It was not the case of a mere holding of premises after the expiration of an old lease in the absence of a new agreement, which would have been a ten-

ancy at sufferance; and would not become such by a neglect or refusal to give the lease contracted for, if such neglect or refusal were shown. In fact, however, according to the bill of exceptions, the plaintiff proposed a form of a lease which the defendants kept under consideration, and although never executed by the plaintiff, the defendants had made no objection to it at the time they abandoned the premises.

The defendants further object to the ruling that if the defendants entered under the agreement to repair and give a new lease in writing of the whole building, even if the jury should find that the agreement was to repair the whole building, the failure of the landlord to do so would not justify the defendants in changing the character of the tenancy from that of a tenancy at will to a tenancy at sufferance. The presiding judge had previously instructed the jury that the burden of proof was upon the plaintiff to show that the defendants had entered under the new agreement; and the obvious meaning of this instruction is that if the defendants had thus entered, a tenancy at will was created, which would not be converted into a tenancy at sufferance by a failure to make the repairs as agreed; and this was correct. Even if the making of the repairs upon the whole premises was a condition precedent to the acceptance of the new lease by the defendants, yet, by entering upon the premises under the new agreement before this was done, they had made themselves the tenants at will of the plaintiff, and the failure of the plaintiff to perform that which he had agreed to do would be a breach of contract for which they would be entitled to their action, but would not enable them to terminate the tenancy upon which they had entered, or to abandon the premises abruptly as a tenant at sufferance might do, nor would it deprive the plaintiff of his right to demand the rent of the premises which became due by virtue of the agreement under which they had entered. *Leavitt* v. *Fletcher*, 10 Allen, 119. *Surplice* v. *Farnsworth*, 7 Man. & G. 576.

In considering what the rent of the estate at will should be, the terms of the parol agreement were properly referred to, and also the fact that the defendants had paid in answer to the demand of the plaintiff for the first quarter at the rate of $400 per quarter, which was the amount stipulated in that agreement.

*Exceptions overruled.*