HENRY LYON & another *vs.* JOHN H. CUNNINGHAM & another.

Suffolk. Jan 10. — Feb. 29, 1884. DEVENS & HOLMES, JJ., absent.

The letting into and taking possession of premises, under an agreement for a written lease, do not, of themselves, create such a tenancy at will as requires the notice prescribed by the Gen. Sts. *c.* 90, § 31, by the tenant, in order to determine it, if the landlord refuses to execute the lease agreed upon.

CONTRACT for use and occupation of certain premises in Boston, from December 1, 1881, to March 1, 1882. Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiffs testified that they and the defendants met on August 11, 1881, when the defendants asked the plaintiffs to lease them the premises, stating that they wished to use the building for storage of iron pipe and for other purposes connected with their business, as it was convenient to their place of business ; that the plaintiffs agreed to lease the premises to the defendants for a term of three years, at the rent of $550 a year, payable quarterly, from September 1, 1881 ; and that, after the terms of the agreement had been concluded, but at the same interview, upon the request of the defendants that it should be put into writing, the plaintiff Lyon promised the defendants to prepare a written lease for execution ; that the defendants also asked the plaintiffs to strengthen the floor of the building, so that it might safely support the great weight of the iron pipes which they intended to place upon it, and to make certain other

changes for the defendants' convenience, which the plaintiffs undertook to do, and did do to the satisfaction of the defendants; that the plaintiffs gave the defendants permission to occupy as soon as these repairs would allow, but agreed to charge no rent until September 1, and the defendants accordingly entered into occupation about August 20; and that, at this interview, nothing was said by either party about underletting.

The defendants testified that they met the plaintiffs on August 11, 1881, when it was agreed that the plaintiffs should execute and deliver to the defendants a written lease of the premises for the term of three years, from September 1, 1881, at the rent of $550 a year, payable quarterly; that the plaintiff Lyon should prepare the lease and present it to the defendants for execution at once; and they gave the defendants permission to enter and occupy the premises in the mean time, no rent to accrue for such occupation until the beginning of the term to be created by the lease.

It further appeared that the plaintiff Lyon did prepare the lease, and early in September went to the defendants' place of business for the purpose of having it executed; but, the defendants being absent from Boston, that was not accomplished. No demand for the lease was afterwards made upon Lyon, except upon casual meetings in the street; but, on several occasions during the first quarter of the term, the defendants called upon the plaintiff Sawyer for the lease; and he, not knowing it had been prepared, each time stated that it was through inadvertence that it had not been made, but that he would speak to Lyon about the matter and have it attended to. About December 1, when the quarter's rent became due, Lyon went with the lease and the rent bill to the defendants' place of business; and he testified that the lease was then left with the defendants for their examination and execution. The defendants denied any knowledge that it was then left. On December 23, Lyon again went to the defendants' place of business; and the defendants testified that they then first saw the lease. The lease was not signed, but Lyon offered to execute it. One of the defendants, supposing, as he testified, that the lease was drawn as he claimed it should be, gave the plaintiffs a check for the amount of the first quarter's rent and began to sign the

lease; but the other defendant then discovered that the lease contained a covenant on the part of the lessees not to underlet without the written assent of the lessors, whereupon the defendants demanded that the covenant should be stricken out. Lyon declined to strike it out, and said he would speak to Sawyer about it. A few days later, both plaintiffs called on the defendants, and the same demand by the defendants and refusal by the plaintiffs were made; and the defendants testified that they said that, unless the clause was stricken out, the trade would be off. This the plaintiffs denied. The plaintiffs offered to indorse on the lease a permission to the defendants to underlet for a purpose no more objectionable than their own occupation. Thereupon the defendants refused to accept the lease, and said they should vacate the premises; and the next day, December 28, wrote a letter notifying the plaintiffs that they should vacate the property on December 31. The plaintiffs told the defendants they should not accept a surrender of the premises; but on December 31, the defendants enclosed the keys in a sealed envelope, with a letter stating that they had left, and delivered the same to the plaintiffs, and the defendants did not occupy the premises thereafter, and testified that that was as soon as they could have vacated the building. The defendants also paid an amount equal to one month's rent from December 1, and never requested the return of the check of December 23, but paid it on presentation.

On January 2, 1882, the plaintiffs wrote the defendants that, as they had already told the defendants, they should not accept the keys, but should claim to hold the defendants as tenants at will. The defendants then replied, denying that they were tenants at all, the written lease not having been executed, and, on January 16, the plaintiffs wrote them that they should not waive specific notice, according to law, of intention to quit the premises, and meantime should hold the defendants responsible for the rent; but added that, if the premises could be let before such termination of the defendants' tenancy, the plaintiffs would credit, on account of the defendants' rent, such sums as might be received from the new tenant up to that time.

The plaintiffs gave the defendants no notice to quit, or of their intention to terminate the tenancy, and no other surrender was

made by the defendants than that above stated, and nothing further passed between the parties; but, on May 22, 1882, the plaintiffs entered and caused certain work to be done upon the premises for the convenience of a new tenant, who entered on June 1. No objection to the lease offered was ever made by the defendants except as to the clause forbidding underletting. The plaintiffs contended that the contract of August 11 was one to let the premises to the defendants only, for use by them in the course of their business; and that the lease tendered satisfied their agreement.

The defendants asked the judge to give the following instructions: " 1. The right to underlet is incident to the estate of a lessee, and he cannot be deprived of it except by express agreement. If the plaintiffs agreed to give the defendants a lease, they were bound to give a lease with such covenants only as are incidental or proper to the estate demised. A covenant on the part of the lessees not to underlet is not a proper covenant, and the refusal of the plaintiffs to execute a lease without such covenant not to underlet was a breach of their agreement. 2. If the defendants entered the premises under a contract for a written lease for three years, and the plaintiffs refused to execute such a lease as the contract called for, then, upon such refusal, the defendants were not bound to give the statutory notice to determine the tenancy. And if, upon and by reason of such refusal, the defendants vacated the premises, they are only liable for the time they actually occupied. 3. If the plaintiffs, by agreeing to execute a written lease, induced the defendants to enter the premises, and then refused to execute the lease agreed upon, the defendants were not bound to give the statutory notice to quit. 4. If the defendants entered under a license to occupy the premises until the plaintiffs could prepare the lease agreed upon, and the plaintiffs then refused to execute such lease, then the tenancy expired with such refusal, and no notice was required to determine it. 5. If the parties misunderstood each other as to a material part of the contract under which the defendants entered the premises, upon such misunderstanding being disclosed, either party could withdraw from the contract, and if the defendants did so withdraw, and vacate the premises, then they are liable for such time only as they had the beneficial

use of the premises. 6. If the defendants paid the plaintiffs for the use and occupation ending December 1, 1881, under the belief that the plaintiffs were about to execute such a written lease as the agreement under which they entered called for, such payment would not be a waiver of the defendants' right to the lease, nor would it change the character of their occupation or their tenancy. 7. If the plaintiffs, after the surrender of the premises, on December 31, 1881, by the defendants, resumed possession or control of the premises, without notice to the defendants, the plaintiffs thereby accepted the surrender, and cannot recover, even though possession was so resumed after the bringing of this action. 8. By resuming possession of the premises and making alterations therein, in the month of May, 1882, without notice to the defendants, the plaintiffs accepted the surrender made December 31, 1881, by the defendants."

The judge gave the first instruction asked for; the third, with the word "fraudulently" inserted before the word "induced;" the fourth, with the word "mere" inserted before the word "license;" but refused to give any of the others, and further instructed the jury as follows: "Where a person is let into possession under a contract to take a lease, his possession is a tenancy at will, and the statute requires a written notice to quit in order to terminate such a tenancy. If it was a part of the contract of letting that a written lease should be given, yet if the defendants entered into possession of the premises, under the agreement, before this was done, they made themselves tenants at will of the plaintiffs, and the failure of the plaintiffs to perform that which they had agreed to do would be a breach of contract, for which they would be entitled to their action, but would not enable them to terminate the tenancy upon which they had entered, or to abandon the premises abruptly, as a tenant at sufferance might do, nor would it deprive the plaintiffs of their rights to demand the rent of the premises, which became due according to the terms of the agreement under which they entered. Unless the defendants show that some other understanding was had between the parties as to the duration of the term or the event which should terminate it, or the method of its termination, or unless the plaintiffs waived notice, or consented to the termination, or

accepted the surrender of possession, the statutory rule would apply."

The jury returned a verdict for the plaintiffs; and the defendants alleged exceptions.

*H. W. Bragg*, for the defendants.

*C. P. Sampson*, for the plaintiffs.

FIELD, J. It has been much discussed whether one who is let into the possession of land under a contract for a deed, intended to be executed and delivered as soon as the title can be examined and the deed prepared, can, while the contract remains in force and unexecuted, be regarded as a tenant of the vendor, or be held liable to pay for the use and occupation. By perhaps a majority of the courts it is considered that he is a licensee; that at law his right to occupy is determinable at any time by entry or demand for possession; that, if he accepts the deed, he is liable for nothing except under his contract for the purchase; that, if he refuses the deed, he may then be held liable to pay for the intervening occupation, either in an action of trespass, after entry, or ejectment, or perhaps in assumpsit; that, if the owner refuses to give a deed according to the contract, the vendee may immediately abandon the possession, and the owner cannot maintain an action of any kind on account of the intervening occupation. There may be special circumstances attending the transaction from which an agreement to pay for the intervening occupation may be inferred or implied, but it is not by these courts inferred or implied from the sole fact of a permissive occupation pending the preparation and delivery of the deed. *Howard* v. *Shaw*, 8 M. & W. 118. Taylor's Landlord & Tenant (7th Am. ed.) § 25, note. Other courts have called such an occupant a tenant at will. If the authority to occupy is oral, he must be a tenant at will while the authority continues, if he is a tenant at all; for he cannot, while he is rightfully occupying under the authority of the owner, be a tenant at sufferance. Some English judges deny that the relation of landlord and tenant exists in the case supposed, and others call the occupant a mere tenant at will, holding strictly at the will of the owner, and not entitled to notice to quit, as tenants from year to year are. It seems to be the law now in England, that such an occupant, whatever he may be called, is not to be held liable

to pay for use and occupation during the period the contract remains unexecuted and in force, from the mere fact that he has been let into possession, and the possession has been beneficial. *Winterbottom* v. *Ingham*, 7 Q. B. 611. *Corrigan* v. *Woods*, I. R. 1 C. L. 73. *Tomes* v. *Chamberlaine*, 5 M. & W. 14. *Braythwayte* v. *Hitchcock*, 10 M. & W. 494. *Gray* v. *Stanion*, 1 M. & W. 695. *Hegan* v. *Johnson*, 2 Taunt. 148. *Lewis* v. *Beard*, 13 East, 210. See *Dennett* v. *Penobscot Fair Ground Co.* 57 Maine, 425; *Carpenter* v. *United States*, 17 Wall. 489.

In this Commonwealth, it was for some time doubtful what such an occupant was to be called. *Number Six* v. *M'Farland*, 12 Mass. 324. *Little* v. *Pearson*, 7 Pick. 301. *Quincy Parish* v. *Spear*, 15 Pick. 144. *Cheever* v. *Pearson*, 16 Pick. 266. But in *Gould* v. *Thompson*, 4 Met. 224, he was distinctly declared to be a tenant at will, and was held liable for use and occupation during the time of his actual occupation, and this court has continued to call such an occupant a tenant at will ever since. *Foley* v. *Wyeth*, 2 Allen, 131. *Towne* v. *Butterfield*, 97 Mass. 105. *Dunham* v. *Townsend*, 110 Mass. 440. *Emmons* v. *Scudder*, 115 Mass. 367. That neither the designation of licensee nor of tenant at will expresses all the rights and obligations of such an occupant is manifest. The contract of purchase may be one that courts of equity will, under the circumstances, specifically enforce; if the contract is in writing, the parties have their action at law for a breach of it; and the rights of a party are not the same if he breaks the contract as if he keeps it. In *Dakin* v. *Allen*, 8 Cush. 33, this court said: " But it is sometimes said that one who is in thus under a contract for a sale is tenant at will to the owner. In a certain sense he is a tenant at will, as a mortgagor is tenant at will to the mortgagee, because he may enter upon him and eject him, if he can do it peaceably, or maintain a real action on his title, and thus gain the possession. He is like a mortgagor in relation to a mortgagee, in another respect; he is under no obligation to pay rent, unless upon an express agreement." It was held in this case that the occupant, being in possession, by the oral permission of the owner, under a bond for a deed, was not liable to the landlord and tenant process provided by the Rev. Sts. *c.* 104, § 2, because he was not the lessee of the land

within the meaning of that statute. See *Hastings* v. *Pratt*, 8 Cush. 121.

In *King* v. *Johnson*, 7 Gray, 239, the court said : " Although, in a certain sense, a person occupying land under a contract of purchase may be said to be a tenant of the owner, still the analogy does not hold good in all respects. In one essential particular, it fails. The occupier is not liable to pay rent.to the owner."

That this is a peculiar tenancy at will is shown by *Gould* v. *Thompson, ubi supra.* In that case, the building having been destroyed by fire before the deed was offered, it was held that the vendee was not bound to accept the deed ; that he might recover back the purchase money he had paid ; and that he had a right to abandon the possession after the fire, and was only liable for use and occupation during the time of the actual occupation. The statutory law in regard to determining estates at will by notice was then substantially the same as now, and the occupant had not given the statutory notice, although this fact is not discussed in the opinion. St. 1825, *c.* 89, § 4. Rev. Sts. *c.* 60, § 26. Gen. Sts. *c.* 90, § 31. Pub. Sts. *c.* 121, § 12. The decision that the occupant was liable to pay for the four days of actual occupation was made, so far as it was made upon decided cases, upon the authority of *Hull* v. *Vaughan*, 6 Price, 157. But that case was not an action against a vendee who had been let into possession under a contract of purchase ; it was a peculiar case, not entirely analogous, and it has not been regarded in England as establishing the doctrine that a vendee in possession under a contract of purchase is liable for use and occupation pending the performance of the contract. *Winterbottom* v. *Ingham, ubi supra.*

Considerations somewhat similar have been applied to cases where a person has been let into possession under an agreement for a written lease. Written leases differ so much in their terms and provisions, sometimes conveying an estate almost equivalent to a fee, and sometimes an estate little more than an estate at will, and the reasons for the delay or failure to deliver the lease have been so various, that it is more difficult to determine the general principles on which the cases have been decided.

In English cases, the statement is made that a person let into possession under an agreement for a lease, who has not paid rent, is a strict tenant at will, and that on the payment of rent he becomes a tenant from year to year. *Clayton* v. *Blakey*, 2 Smith Lead. Cas. (7th Am. ed.) 116, note. *Chapman* v. *Towner*, 6 M. & W. 100. *Pollen* v. *Brewer*, 7 C. B. (N. S.) 371. *Howard* v. *Shaw, ubi supra*.

If the lease agreed to be given reserves rent, and the intended lessee is let into possession, and holds during a part of the term intended to be created by the lease, it is a natural inference that the parties intended that rent should be paid for the occupation during this part of the term, although the rent intended is rent under and in accordance with the terms and provisions of the written lease, which, on its execution, relates back to the beginning of the term. A person so let in under an agreement for a lease has uniformly, so far as we know, been held liable for use and occupation during the time of actual occupation, unless there is found to be an agreement to the contrary. *Dunne* v. *Trustees*, 39 Ill. 578. *Rogers* v. *Pullen*, 2 Bing. N. C. 749. *Sloper* v. *Saunders*, 29 L. J. (N. S.) Ex. 275. *Smith* v. *Eldridge*, 15 C. B. 236. *Thetford* v. *Tyler*, 8 Q. B. 95. *Dawes* v. *Dowling*, 22 W. R. 770. *Greton* v. *Smith*, 33 N. Y. 245. *Braythwayte* v. *Hitchcock, ubi supra*. *Forbes* v. *Smiley*, 56 Maine, 174. *Hegan* v. *Johnson, ubi supra*.

Tenancies from year to year are unknown in this Commonwealth, but an agreement may perhaps be inferred that the occupant is let in as an ordinary tenant at will until the lease is delivered, from circumstances which would not warrant this inference if the contract was for an absolute purchase. The payment and acceptance of rent unexplained is strong, if not conclusive, evidence of such a tenancy.

We are not aware that it has been actually decided anywhere that, if a person is let into the possession of land under an oral contract for a written lease, which the parties intend shall be executed and delivered forthwith, and the letting into possession has been solely in anticipation of the execution of the written lease, and there is no agreement in reference to the intervening occupation, no payment of rent, and no other circumstances from which an agreement to pay rent can be fairly inferred, and the

owner refuses to give a written lease according to the contract, the occupant cannot at once rescind the contract and abandon the possession, without any liability to pay for the occupation beyond the time of actual occupation.

The argument in this case is, that, by our decisions, such an occupant is a tenant at will; that an estate at will is thus created within the meaning of the Pub. Sts. *c.* 121, § 12; that this estate must be determined in accordance with this statute, if not determined in some other legal mode; and that it is not a legal mode of determining such an estate to abandon the possession, unless the landlord accepts the surrender of the estate. Without deciding that, by this peculiar tenancy at will, an estate at will within the meaning of this statute is created, but assuming it to be so, such an estate may be determined in any manner the parties may have mutually agreed upon, and it may be subject to a condition, or be limited upon a contingency and determined upon the happening of the contingency. *Creech* v. *Crockett*, 5 Cush. 133. *Elliott* v. *Stone*, 1 Gray, 571. *Ashley* v. *Warner*, 11 Gray, 43. *May* v. *Rice*, 108 Mass. 150. *Davis* v. *Murphy*, 126 Mass. 143.

If the occupant has been let into possession under an oral contract for a written lease, solely in anticipation of the delivery of the lease, and without any other facts and circumstances from which an agreement can be inferred that he will hold as an ordinary tenant at will until it is delivered, it is a fair legal construction of the contract and acts of the parties, that the possession is taken and held on the condition that such a written lease as the contract calls for shall be delivered; and, if the landlord refuses to execute and deliver such a written lease, we think the tenant can then treat the contract as at an end, and the tenancy is thus determined by the non-performance of the condition as one of the incidents of the contract.

The plaintiff relies upon *Emmons* v. *Scudder*, 115 Mass. 367. That case in many respects resembles the case at bar, but it differs in this, that the defendants abandoned the premises because, as they alleged, the plaintiff refused to repair according to the agreement. The written lease remained unexecuted, but the plaintiff had offered such a lease, and the defendants had made no objection to it. The defendants had before been

FEBRUARY, 1884.

tenants of a part of the premises agreed to be let, and remained in possession of this part, and let the remaining portion, and had received one or two months' rent therefor. They had themselves, knowing all the facts, paid one quarter's rent for the whole premises to the plaintiff, but under protest. This was evidence that the defendants had become ordinary tenants at will under the new agreement until the lease should be executed, and the plaintiff had never refused to execute a lease according to the agreement. It is indeed said in the opinion, that a refusal to execute the lease would not convert this tenancy at will into a tenancy at sufferance; and that if the making of the repairs were a condition precedent to the acceptance of the lease, "yet, by entering upon the premises under the new agreement before this was done, they had made themselves the tenants at will of the plaintiff," and while the failure to make the repairs would be a breach of contract, it would not entitle the defendants to terminate the tenancy upon which they had entered, as a tenant at sufferance might do. These statements were not necessary to the decision, although, if an ordinary tenancy at will was established between the parties, they seem unobjectionable.

The refusal to make repairs when the tenant has entered relying upon the promise of the landlord to make them, is not necessarily the same thing as a refusal to give the written lease agreed upon. The agreement to make repairs may be an independent stipulation, for the breach of which an action will lie. The refusal to give the lease agreed upon is a breach of the contract of letting.

We think that the instruction, that the letting into and taking possession under a contract for a written lease, of themselves, create such a tenancy at will as necessarily requires of the tenant the statutory notice in order to determine it, even if the landlord refuses to execute a lease according to the contract, unless there is some other understanding between the parties as to the duration of the term or the event which should terminate it, is erroneous.

We do not find it necessary to consider the remaining exceptions.                                        *Exceptions sustained.*