GIDEON M. WASHBURN & another *vs.* ERNEST L. WHITE & another, trustees, & others.

ERNEST L. WHITE & another, trustees, *vs.* GIDEON M. WASHBURN & others.

ALEXANDER M. GRAHAM *vs.* GIDEON M. WASHBURN & another.

Plymouth.    December 10, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Landlord and Tenant.    Reference.    Arbitrament and Award.    Equity Jurisdiction,* Specific performance, One seeking equity must do equity.    *Contract,* Construction.    *Summary Process for Possession of Land.*

Where a lease of land, which contemplated the making of extensive improvements and the erection of buildings upon the premises for use in business, contained a provision whereby the lessee agreed to pay rent during the term of the lease and " for such further time as the lessee may hold the same " and the lessor agreed that, if the lessee requested it, he would sell and convey the premises to the lessee at a price to be " agreed upon and fixed " by the award of three disinterested persons, one to be chosen by the lessor, one by the lessee, and the third by the two so chosen, and, on the day of the expiration of the lease, the lessee in writing notified the lessor of his determination to purchase, appointed a referee in accordance with the terms of the agreement and remained in possession of the premises, it was *held,* that thereafter, while in good faith the lessee was seeking to have the price determined and the sale consummated within a reasonable time, he was in possession under the contract of sale and not as tenant under the lease, and, although he paid nothing as rent to the lessor pending the consummation of the sale, he was not liable in an action of contract for rent, nor subject to be ejected in a summary process for possession of the land brought under R. L. c. 181.

Where, by the terms of a contract for the sale of land, the purchase price is to be " agreed upon and fixed " by three disinterested persons, one to be chosen by each of the parties to the contract and the third by the two so chosen, and there is no provision in the agreement as to the effect of an award by a majority of the three, such an award by a majority is not valid or binding upon the parties to the agreement.

On appeal from a decree dismissing, after a hearing, a bill in equity for specific

performance of an agreement to sell and convey land, all the evidence was reported, and it appeared therefrom that the agreement was contained in a lease of the land by the defendant to the plaintiff and provided that, if the plaintiff requested, the defendant would sell and convey the land to him for a price to be " agreed upon and fixed " according to the award of three disinterested persons, one to be chosen by each party and the third by the two so chosen, and that, on the day that the lease expired, the plaintiff notified the defendant of his desire to purchase and of the name of a referee chosen by him, and three referees thereafter were chosen in accordance with the agreement. There was evidence tending to show that the referees unreasonably delayed making an award and that, although the defendant urged them to proceed with the business diligently, the plaintiff did not urge them, but on the contrary sought further delay, that, being informed that it was impossible for the referees to agree and that it would be necessary to appoint new ones, the plaintiff took no steps to do so, and declined to attempt to settle the controversy in other ways when the defendant approached him on the subject. There also was evidence tending to show that the plaintiff thought that the referee appointed by him never would agree to an award which the other referees would agree to, and that he was pleased with the prospect, that he had but little property and had refused to give to the defendant security for the payment of rent pending the trial of a suit with regard to the same controversy brought against him by the defendant in the meantime, and that he did not bring this suit until after the defendant had brought such other proceedings against him. The grounds of the judge's finding for the defendant were not reported. *Held*, that it was the duty of the plaintiff to have the price determined and the conveyance made within a reasonable time, and that the presiding judge well might have found that the plaintiff did not perform that duty; or that he might have found that the plaintiff was acting in bad faith in seeking to keep possession of the property without any intention to pay for it by purchase or otherwise; and that, on either finding, the decree would be justified.

BILL IN EQUITY filed in the Superior Court for the county of Plymouth May 11, 1907, to compel performance of a contract, contained in a lease, to sell the leased premises to the plaintiffs; also

CONTRACT by the defendant trustees in the suit in equity against the plaintiffs therein, for rent due under the lease, the writ being in the same court, dated March 2, 1907 ; also

SUMMARY PROCESS under R. L. c. 181, by a lessee under a lease in writing from the defendant trustees in the suit in equity to obtain possession of the premises from the plaintiffs therein. Writ in the Police Court of the city of Brockton dated March 30, 1907.

The bill in equity was heard before *Fessenden*, J., and a commissioner was appointed to take the testimony under Equity Rule 35. The presiding judge ordered a decree that the bill be dismissed, and the plaintiffs appealed.

The actions of contract and of summary process, the latter on appeal, were heard before *Sherman,* J., on agreed statements of fact.    He found for the plaintiffs in both cases, and the defendants appealed.

The facts are stated in the opinion.

*A. F. Barker,* (*H. B. Wilbur* with him,) for the plaintiffs in the first case and the defendants in the other cases.

*F. W. Kittredge & W. Kittredge,* for the defendants in the first case and the plaintiffs in the other cases, (*L. S. Thierry* with them in the first case).

KNOWLTON, C. J.    The first of these cases is a suit in equity, brought to enforce a contract for the sale of real estate, made with the plaintiffs, in a lease from the testator of the defendant trustees, who will hereinafter be called the defendants.    The defendants succeed to the property under the will of George U. White, who leased the premises to the plaintiffs for the term of twenty years.    The lease expired on April 1, 1905, and it contained a provision as follows: " Or if said lessees or their heirs and assigns request it, to sell and convey the demised premises to said lessees or their heirs and assigns by good and sufficient warranty deed, free from all incumbrances for a price then to be agreed upon and fixed in the same manner as above provided for fixing the annual rental for the extension of this lease."    The manner so provided was " that the same shall be fixed and determined by three disinterested persons, one to be selected by the lessor or his heirs or assigns, one to be selected by the lessees or their heirs or assigns, and the two thus chosen to select a third person," etc.    On April 1, 1905, the plaintiffs gave the defendants a request in writing for the appointment of a referee to determine the purchase price of this land, with a statement that they appointed one Copeland as a referee for the same purpose.    The defendants, after an interval, appointed one Fletcher as their referee to act with Copeland.    Subsequently these two selected one Low for the third referee.    The plaintiffs have continued in the occupation of the property to the present time without paying rent.

The first question is what were the rights of the respective parties under this contract.    The plaintiffs contend that they have been occupying as purchasers, whose only obligation was

to pay the price of the property as soon as it was fixed, and the defendants contend that they were liable for rent in the mean-time.  It seems very plain that a lessee, availing himself of his option to buy under a contract of this kind, and remaining in occupation after the expiration of his lease, is in under the con-tract to purchase, and not as a tenant holding over.  There can be no reasonable doubt that the contract should be construed as giving the plaintiffs a right to remain for such reasonable time as is necessary to fix the price and consummate the purchase, rather than as compelling them to vacate the premises and to leave them unoccupied for this interval.  The lease contem-plated the making of extensive improvements, and the erection of buildings upon the land for use in business, and several build-ings had been erected and were in use by the plaintiffs and their subtenants when the lease expired.  The option to purchase was in part to enable these different kinds of business to go on with-out interruption.  Naturally it was supposed that the price would be fixed quickly, and the deed delivered and paid for without delay.

The rights of the plaintiffs were like those of persons who originally enter upon real estate and occupy it under a contract to buy it.  It is the ordinary rule that, in the absence of an agreement for payment, such occupants are not liable for rent or for use and occupation.  The purchase price for the land, when paid, constitutes the consideration for the property, including the use of it after possession is taken and before the title is transferred.  *Westgate* v. *Wixon*, 128 Mass. 304.  *King* v. *John-son*, 7 Gray, 239.  *Dakin* v. *Allen*, 8 Cush. 33.  *Newell's appeal*, 100 Penn. St. 513.  *Knerr* v. *Bradley*, 105 Penn. St. 190.  *Stacy* v. *Vermont Central Railroad*, 32 Vt. 551.  *Mack* v. *Dailey*, 67 Vt. 90.  *Watson* v. *Coast*, 35 W. Va. 463, 474.  *Campbell* v. *Fetterman*, 20 W. Va. 398.  The general subject was considered very fully by Mr. Justice Field in *Lyon* v. *Cunningham*, 136 Mass. 532.  Whatever the rights of the de-fendants were at common law, as holders of the title, we are of opinion that in equity the plaintiffs had a right to remain in possession under the contract of purchase while they were taking proper measures to ascertain the amount to be paid to obtain a transfer of the title.

The referees failed to agree upon a price for the property, and on May 11, 1907, more than two years and one month after the expiration of the lease, the plaintiffs brought this bill to have the price determined by 'the court, and specific performance ordered, and injunctions issued against the prosecution of a suit by the defendants to recover rent, and of another suit, brought by a lessee of the defendants, to recover possession, which suits had been begun not long before. After an extended hearing the bill was dismissed, and the case comes before us on an appeal by the plaintiffs.

The grounds on which the decree was ordered for the defendants are not stated in the record, but all the evidence was reported by a commissioner. The question is whether the finding for the defendants upon this evidence was plainly wrong. *Hodgdon* v. *Cummings,* 151 Mass. 293, 295. *Brown* v. *Brown,* 174 Mass. 197, 198. The decision was not made on the ground that the award of two of the referees, not agreed to by the third, was binding, for the judge expressly ruled that it was not binding. The case of *Phippin* v. *Stickney,* 3 Met. 384, relied on by the defendants, does not decide that an award by a majority of a board of referees, to whom a submission is made at common law, is valid. It plainly states that such an award is invalid. The case was decided, not on the ground that there was a binding award, but on the ground that the contract mentioned the only three persons who could act as arbitrators, and, as they could not agree and an award was impossible, the plaintiff might recover because the contract contemplated that, under such conditions, the land should be conveyed at a reasonable price. In *Hood* v. *Hartshorn,* 100 Mass. 117, 121, it is assumed that, if appraisers fail to agree, no valid award can be made by a majority of them. See also *Wade* v. *'Dowling,* 4 El. & Bl. 44; *Little* v. *Newton,* 2 M. & G. 351; *Daniels* v. *Ripley,* 10 Mich. 237; *French* v. *Butler,* 39 Mich. 79; *Security Live Stock Ins. Association* v. *Briggs,* 22 Ill. App. 107, 110; *Moore* v. *Ewing,* Coxe, 144, 147.

If a submission is made under our statute, or if the parties agree that a majority may act, the rule is different. R. L. c. 194, § 7.

Under the provision in the lease it was contemplated that, if

the lessees would take advantage of it, they should proceed promptly to have the price determined, and should use all reasonable efforts to consummate the purchase without unnecessary delay. The opinion in *Hood* v. *Hartshorn,* 100 Mass. 117, 121, which is a case similar to the present one, contains this language: " If then one set of appraisers fail to agree, or if they act in such a manner as to render them obviously unfit to decide the matter, another appointment should be made ; and a fair interpretation of the contract requires a lessee to use all reasonable˙ efforts in his power in order to obtain suitable appraisers who will agree. He must continue to act until he puts the lessor in the wrong, or else makes it manifest that no suitable persons can be obtained to do the service within a reasonable time, which can hardly be supposed." The judge might well find upon the evidence that the plaintiffs had fallen far short of their duty in this respect, and that they were not in a condition to invoke the aid of a court of equity in the enforcement of the contract. Indeed, he might find that they had lost their rights under the contract by a failure to proceed in good faith to have the sum ascertained and the payment made within a reasonable time. There was no evidence that they ever took any measures to induce the referees to proceed with the business diligently and to finish it without unreasonable delay. Two of the referees were called by the plaintiff as witnesses, and examined at great length in regard to their action under the appointment. It appeared that the defendants endeavored in different ways to have a result reached which would settle the controversy ; but nothing of this kind was shown to have been done by the plaintiffs, and, when approached by the defendants in regard to it, they declined to co-operate. In October, 1906, the plaintiffs were invited by the referees to come before them with the defendants, in the hope that in this way the referees might be assisted in their effort to come to an agreement ; but they declined the invitation. On November 28, 1906, the defendants made a formal request of the plaintiffs that they should unite with them in discharging the referees for their failure to make an award, but this request was declined, with a statement that the plaintiffs preferred to give the referees " further time, rather than the appointment of a new board."

The plaintiffs did not pay the taxes on the property for the year 1905 until February, 1907, when it was in danger of being sold for non-payment of the taxes, and they had not paid the taxes for the year 1906 at the time of the hearing in the summer of 1907. There was testimony indicating that they thought the referee chosen by them would never agree to an award to which the other two could be induced to agree, and that they were pleased with the situation in that respect. On December 7, 1906, two of the referees, Fletcher and Low — Copeland, the referee appointed by the plaintiffs, voting in the negative — made a report in writing to each of the parties that it was impossible for them to agree upon a price. The plaintiffs took no action upon this information. Afterwards the defendants brought a bill in equity to have the price fixed by other referees or by a master appointed by the court and to obtain security for the income of the property. The judge might have found from the testimony that the plaintiffs not only refused to cooperate to have the price determined in this way but withdrew without cause from an agreement which they had once made to furnish security and declined to do anything to assist in reaching an equitable result. This suit was afterwards discontinued without trial.

On February 25, 1907, two of the referees, Low and Fletcher, joined in an award, to which Copeland did not agree, and which the plaintiffs declined to recognize because it was not made unanimously.

There was evidence tending to show that the plaintiffs were possessed of but little property, one of them paying no tax but a poll tax, and the other having, besides a very small amount of property used in the business, only some small parcels of real estate which were heavily mortgaged. The value of the property to be paid for was fixed by two of the referees at $34,719.75. There was much to indicate that, if the plaintiffs originally exercised their option in good faith, with a purpose to obtain an award and pay for the property promptly, they changed their purpose, and tried to occupy it as long as possible without having the price determined, intending, if there should be an award, not to perform it unless they should deem it favorable to themselves. The present suit was not brought until they

seemed in danger from proceedings to obtain possession, and from a trustee process to recover rent. We are of opinion that the judge was well warranted upon the evidence in finding that the plaintiffs had failed to do that which was necessary to preserve their rights as purchasers under the provision in the lease, and that they were not in a position to ask relief from a court of equity. If he also found that they were acting in bad faith, and were trying to get the use of the property with an intention not to pay for it, either as purchasers or otherwise, we cannot say that his decision was wrong. It follows that the decree in this case must be affirmed.

The next action is by the defendants in the former suit against the plaintiffs in that suit, to recover rent of the property since the expiration of the lease. The date of the writ is March 2, 1907. The case was submitted on an agreed statement of facts, with power in the court to draw inferences, and it comes here upon an appeal from a judgment for the plaintiffs. The agreed statement contains facts which show that the defendants, by the exercise of their option, came into possession as purchasers under the contract, and that, if they proceeded promptly to procure a determination of the price and a transfer of the title, they would not be liable for rent while these details of the purchase were being arranged. As we have already shown, they might, by their failure to proceed to have the price determined within a reasonable time, or by their attempt to remain in possession a long time without completing their purchase or paying rent, and with an intention not to pay the price unless the determination of it should be favorable to themselves, lose their right to hold the property as purchasers, or to set up the exercise of their option against the contract in the lease to pay the " rent as above stated and as above fixed and determined for such further time as the lessees may hold the same." There is nothing in the agreed facts, excepting mere lapse of time without obtaining an award, which tends to show that the defendants lost their right to hold the property as purchasers, without a payment of rent. It is agreed that on April 1, 1905, they made their election in good faith. The bringing by the defendants of the bill in equity now before us is also stated, but we have no other facts which tend to show that the defendants had ceased to act in good faith,

or had failed to use efforts to obtain an award. In the absence of a statement of particulars or further facts, we are of opinion that the court was not warranted in finding that the defendants had lost their rights as purchasers, and were to be treated as in possession without legal justification, subject to the contract which we have already quoted to pay rent after the expiration of the lease. The statement is not full enough to enable the court to determine the rights of the parties from the facts which appear of record. The judgment must be reversed, and the agreed statement of facts discharged, and the case will stand for trial.

The third suit is a summary process for the possession of land, brought in the Police Court of Brockton, under the R. L. c. 181, against the defendants in the last suit. The plaintiff claims under a lease of the premises already referred to, made by the plaintiffs in the last suit on the nineteenth day of February, 1907. This case was submitted to the Superior Court on an agreed statement of facts, with no power to draw inferences, and was decided for the plaintiff. It comes to this court upon an appeal.

This statement of facts also shows that the defendants, at the expiration of the lease, exercised their option to purchase by giving notice of their election and appointing a referee to act in fixing the price. If nothing more appeared, their subsequent possession, at least for a reasonable time, would be referred to the contract to purchase, and they would be in as purchasers and not as lessees holding over.

The summary process for the possession of land is of very limited scope. It lies if there has been a forcible entry into lands or tenements, or if there has been a peaceable entry and the possession is unlawfully held by force, or if the lessee of lands or tenements, or a person holding under him, holds possession without right after the determination of a lease, or if there has been a decree for affirmation and registration of the title to land, or a foreclosure of a mortgage of land. The only ground on which it can reasonably be contended that the present suit can stand is that the defendants were tenants, holding possession without right after the determination of the lease. Even if it be true that at common law their equitable right under their contract would not avail as against a writ of entry brought to

enforce a legal title, their election to purchase under the contract and their possession only as purchasers would take them out of the category of lessees holding possession without right after the determination of a lease. We think it plain that, as against a purchaser holding rightfully under such a contract, a summary process for possession under this statute will not lie. *Kiernan* v. *Linnehan*, 151 Mass. 543. *Lyon* v. *Cunningham*, 136 Mass. 532. *Dakin* v. *Allen*, 8 Cush. 33. *Dunham* v. *Town-send*, 110 Mass. 440. *Larned* v. *Clarke*, 8 Cush. 29. The fact that there had been a lease which had expired did not bring them within the statute, so long as they elected to take possession under the contract for purchase, and continued to do everything that ought to be done to preserve their rights, according to the rule stated in *Hood* v. *Hartshorn*, 100 Mass. 117, 121.

In the present case, like the one last considered, there is nothing in the agreed facts but the unexplained failure to obtain an award that shows a loss of the right of the defendants to rely upon their possession under the contract of purchase. This alone is not enough. It follows that, upon these facts, they do not appear to be persons holding possession without right after the determination of the lease.

But the agreed statement is entirely barren of any information in regard to the conduct of either of the parties in reference to the causes of the long delay without a determination of the price to be paid. If the defendants, by their conduct, lost their right to avail themselves of the contract for a purchase, then they were within the provisions of this statute. Their election to buy gave them only a provisional right to occupy as purchasers. Their right depended upon the performance of their obligation to do what was necessary for the consummation of the contract within a reasonable time. On their failure to do this, they would become persons holding over without right, as they would have been if they had not made an election to buy. See *Gould* v. *Thompson*, 4 Met. 224; *Dunham* v. *Townsend*, 110 Mass. 440, 442. In this case the judgment must be reversed and the agreed statement of facts discharged, leaving the case to stand for trial. The entries will be

> *Decree affirmed; judgments reversed and agreed statements*
> *of facts discharged.*