## J. E. PORTER *vs.* GEORGE W. HUBBARD.

Worcester. Oct. 4, 1882. — Feb. 5, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

After an entry by a mortgagee of a farm to foreclose his mortgage, an arrangement was made between the mortgagee and mortgagor by which the latter was to carry on the farm. Subsequently, A., who had purchased the equity of redemption of the mortgagor, by deed duly recorded, took possession of the farm and carried it on, employing the mortgagor as his agent. A. then, after the crops were sown, borrowed money of the plaintiff, under a promise to pay it back from the first crops raised on the farm. The mortgagee, after this, was informed for the first time that A. was carrying on the farm, and of the agreement A. had made with the plaintiff, and he objected to A.'s paying the plaintiff from the crops. After the crops were gathered, they were allowed to remain in the possession of A., who delivered to the plaintiff a part of the crops to pay the debt due the plaintiff, and who informed the plaintiff, at the time of such delivery, of the mortgagee's claim. The mortgagee subsequently took possession of the crops, including that portion of them delivered to the plaintiff. *Held*, that, even if the arrangement between the mortgagee, after entry, and the mortgagor constituted the latter a tenant at will, there was no evidence that such a relation existed between the mortgagee and A.; and that an action of tort in the nature of trover would not lie against the mortgagee.

TORT for the conversion of four boxes of tobacco. Answer, a general denial. Trial in the Superior Court, without a jury,

before *Staples*, J., who allowed a bill of exceptions, in substance as follows:

In 1875, Moses C. Porter, who owned a farm, a part of which was used for raising tobacco, and a part for various other crops, mortgaged the tobacco land to Samuel H. Dickinson. On March 1, 1876, the equity of redemption of Moses was attached by Augusta A. Porter. On August 15, 1876, Dickinson made an entry for breach of the condition of his mortgage, and a certificate of entry was duly executed and recorded, which recited that such entry was "for breach of condition of the mortgage, and for the purpose of foreclosing the same, and of taking the rents and profits thereof." At the time of this entry, Moses was notified by the defendant, who acted as agent for Dickinson, and also as a subsequent mortgagee who had entered for breach of condition on the same day as Dickinson, that the crops would belong to the mortgagee, and that he, Moses, would be entitled to reasonable compensation for raising them. On November 11, 1876, the equity of redemption of Moses was sold on execution to Augusta, and a deed thereof to her was duly made and recorded. Moses, up to the last-named day, and after that Augusta, occupied the dwelling-house and other buildings on the farm, and carried on the farm as they severally thought proper, hiring the help, determining what crops should be raised, and raising the same, and, in general, deciding all questions relative to carrying on the farm. After November 11, 1876, Moses acted as agent for Augusta.

After August 15, 1876, Dickinson declined to be responsible for payment of hired help, or for seed purchased for raising crops; and, while claiming the crops, left the payment of help, of taxes, and of what might be required for fertilizers, to Moses; and there was no agreement to repay either Moses or Augusta for what they paid for labor, taxes, fertilizers and other expenses, except as above stated. In the fall of 1877, Moses having sold broom corn to pay taxes, the defendant denied his right to do so, and claimed that the crop belonged to the mortgagees. There was no notice to the defendant, or to Dickinson, till June 1878, that Augusta was carrying on the farm. At that time, in a conversation between the defendant and Augusta, she asked what the mortgagees claimed. The defendant informed

her of the mortgages; that the mortgagees had taken possession for the purpose of foreclosure, and to take the rents and profits; that the crops raised belonged to the mortgagees, and that those who raised them would be entitled to a reasonable compensation for the labor. She said she must have enough of the crops to pay the plaintiff. The defendant replied, that the mortgagees objected to her taking any of the crops to pay him. She said she had borrowed $150 of him to raise crops. The defendant said the mortgagees expected to pay her what was just and reasonable for raising the crops, and, when they settled with her, she could pay the plaintiff..

In May 1877, after the tobacco crop was sown and had come up, Augusta borrowed of the plaintiff $150, of which she used $50 to pay the taxes for 1876, about $50 for hired men then working on the farm, and the balance for seed corn used thereon. At the time of this loan, and as part of the transaction, Augusta agreed to repay the same out of the first crops she should raise, and such agreement was the inducement to the loan.

The tobacco crop of 1877 was severed from the land in September, and hung on poles till about December 1, and, in March 1878, was packed in forty boxes procured by Moses, and paid for by the defendant, and placed in a barn in charge of Augusta. In July 1878, Augusta delivered to the plaintiff four of these boxes, in payment of the loan, and made a bill of sale thereof; and these are the boxes in controversy in this action. At the time of this delivery, the plaintiff was informed by Augusta that the mortgagees claimed the tobacco crop of 1877, and that it should not be disposed of by her.

On December 11, 1878, the forty boxes of tobacco and other crops were replevied by Dickinson and the defendant, against the protest of Augusta. A few days afterwards, a settlement of the replevin suits was effected between Augusta and Dickinson and the defendant, in which there was a reckoning of what was her due; and it was considered what crops Moses and Augusta had had, and what timber they or either of them had cut and sold. Allowance was made for all the property either of them had taken or used, not before accounted for, and the expenses of carrying on the farm were put in. The plaintiff

took no part in this settlement, but, after the sale of the forty boxes of tobacco and the application of the proceeds upon the mortgage notes, brought the present action.

After the taking possession on August 15, 1876, the defendant made advances from time to time to Moses in aid of expenses of carrying on the farm, insurance, &c. All of these payments were made by the defendant for Dickinson, who reimbursed him therefor.

Until the fall of 1878, nothing was said, either to Moses or Augusta, by Dickinson or the defendant, about their leaving the farm, and it was not insisted that they should leave until the spring of 1879.

On these facts the defendant asked the judge to rule that the plaintiff was not entitled to recover. The judge declined so to rule; and found specially, "that the possession taken and maintained by Dickinson and the defendant, the respective mortgagees, was not a personal occupation of the farm, or the actual appropriation of the rents and profits thereof, including the tobacco in question, except in special cases where it was done by mutual agreement, the case of said tobacco not being one of said special cases; that after November 11, 1876, Augusta A. Porter occupied the farm until the spring of 1879, by permission of said mortgagees, as a matter of mutual convenience, thus becoming a tenant at will of said mortgagees, and holding the farm in subordination to their rights of possession."

The defendant excepted to said finding, and asked the judge to rule that it was not warranted by the facts in the case. The judge declined so to rule.

The judge found for the plaintiff; and the defendant alleged exceptions.

*C. Delano*, for the defendant.

*F. T. Blackmer*, for the plaintiff.

FIELD, J. After Dickinson entered upon the tobacco land for breach of the condition of his mortgage, a certificate whereof was duly made and recorded, the legal title to the crops then growing or thereafter raised was in him. After such entry, the legal possession was in the mortgagee, although the mortgagor remained in actual occupation. *Thompson* v. *Vinton*, 121 Mass. 139.

If Augusta A. Porter became a tenant at will to the mortgagee, she would be entitled to the crops during the tenancy, but this tenancy must be established by a contract between the parties. As a person claiming title under the mortgagor, in subordination to the mortgage, she would have no right to the crops. The title of the plaintiff, therefore, must depend upon some agreement between Dickinson and Augusta whereby she acquired the ownership of the tobacco, or upon some authority derived from him to deliver it to the plaintiff in payment of her debt. *Gilman* v. *Wills*, 66 Maine, 273. *Marden* v. *Jordan*, 65 Maine, 9. *Page* v. *Robinson*, 10 Cush. 99. *Field* v. *Swan*, 10 Met. 112. *Woodward* v. *Pickett*, 8 Gray, 617.

We are not required to determine, in this case, whether, if a mortgagee of a farm, after entry for breach of condition and a certificate and record thereof, does not retain actual occupation, but intentionally permits the mortgagor or any person claiming under him to occupy and carry on the farm, there is not an implied license to the occupant to use and sell, according to the ordinary course of husbandry, the annual crops, even although a tenancy at will may not be created. *Searle* v. *Sawyer*, 127 Mass. 491. *Hapgood* v. *Blood*, 11 Gray, 400.

In this case, the mortgagees made an arrangement with Moses C. Porter in reference to the occupation of the farm. If the effect of that arrangement was to make him their tenant at will, that tenancy could not be assigned to Augusta, and she did not become a tenant at will in his place by the purchase of his equity of redemption. Augusta entered into occupation on November 11, 1876, without the knowledge of the mortgagees, and this occupation continued without their knowledge until the tobacco crop of 1877 was severed from the land. When afterward they learned of her occupation, they informed her that they had taken possession under their mortgages for breach of condition, and in order to take the rents and profits, and that the crops raised belonged to the mortgagees, and that those who raised them were entitled to a reasonable compensation for their labor; and they claimed the tobacco crop of 1877, and forbade her to use it to pay her debt to the plaintiff. This evidence did not tend to prove a letting or demising of the farm to Augusta, or an agreement that the tobacco crop of 1877

should be hers, or an authority to her to use the crop in the payment of her debts. The plaintiff's title is derived from the delivery to him in July 1878; for the promise of Augusta, at the time of the loan, to pay him out of the crops generally, would give him no title to the tobacco. At the time of this delivery, the plaintiff was informed that the mortgagees claimed the tobacco, and forbade Augusta to dispose of it; so that there is no ground for contending that the defendant is estopped from showing the true state of the title, by reason of any apparent ownership with which he had invested Augusta.

The special finding of the court is, "that after November 11, 1876, Augusta A. Porter occupied the farm until the spring of 1879, by permission of said mortgagees, as a matter of mutual convenience, thus becoming a tenant at will of said mortgagees, and holding the farm in subordination to their rights of possession." A tenant at will, strictly so called, while his tenancy continues, has a lawful possession, and may maintain trespass *quare clausum* against his landlord. *Dickinson* v. *Goodspeed*, 8 Cush. 119. Such a tenancy is created by contract, whereby the premises are let or demised by the landlord to the tenant. The contract may be express, or it may be inferred from circumstances, but it must exist. *Edwards* v. *Hale*, 9 Allen, 462. *Emmons* v. *Scudder*, 115 Mass. 367.

Whether a tenant at sufferance, occupying by permission of his landlord, but without any agreement with him to occupy, was liable in this Commonwealth before the Gen. Sts. c. 90, § 25, in assumpsit for use and occupation, is a question which is in doubt; *Merrill* v. *Bullock*, 105 Mass. 486; but permission merely by the landlord to a tenant at sufferance to occupy, does not create a tenancy at will. There must be an agreement shown, whereby the one agrees to hold, and the other to permit him to hold, the possession of the premises. *Edwards* v. *Hale*, *ubi supra*. A mortgagor and his assigns before entry by the mortgagee are not liable to pay rent, or to an action for use and occupation, unless by virtue of an agreement to pay rent or to occupy as a tenant. *Hastings* v. *Pratt*, 8 Cush. 121. *Wilder* v. *Houghton*, 1 Pick. 87.

Whether, since the Gen. Sts. c. 90, § 25, a mortgagee after entry to foreclose can maintain against his mortgagor an action

for use and occupation, in the absence of any agreement to pay rent, has not been decided. *Morse* v. *Merritt*, 110 Mass. 458.

We are uncertain whether the court found that there was an agreement between the mortgagees and Augusta, whereby they demised the farm to her, or a mere permission by them to her to occupy it in subordination to their rights of possession; but, whatever construction may be put upon the finding, we are of opinion that, upon the facts found, the plaintiff was not entitled to recover.     *Exceptions sustained.*