C. A. SPENCER AND SON COMPANY *vs.* MERRIMAC VALLEY POWER AND BUILDINGS COMPANY.

Suffolk.  March 13, 1922. — June 29, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Equity Jurisdiction,* Adequate remedy at law.  *Landlord and Tenant.*

A lease of premises to a corporation engaged in the manufacture of tanning extracts and other similar preparations contained a covenant by the lessee " to purchase from the Lessor, all water, steam, heat, gas and electricity, elevator service, transportation service, and any other service required or used by the Lessee and rendered by the Lessor, other than the use of floor space, and to comply and cause its officers and employees to comply from time to time with any and all customary or reasonable regulations made by the Lessor for or in relation to the management of said building or buildings." There was no contract or agreement by the lessor to manufacture steam for the lessee. There was an option for renewal. Previous to the expiration of the term of the lease, the parties negotiated relating to a lease on different terms but reached no conclusion, and the lessee continued in occupation of the premises after the termination of the lease. The lessor then brought an action at law to collect what he claimed was due for rent and other charges. The lessee paid all except charges for steam, which it contended were unfair and unreasonable. The lessor then

threatened to discontinue supplying steam, and offered the plaintiff the use of a boiler, so that the latter might operate its own steam plant. The lessee then brought a suit in equity praying that the rights of the parties under the lease and the measure of the plaintiff's liability for steam be determined; that an accounting be had; that the action at law be enjoined, and that the defendant be prohibited from cutting off the supply of live steam. Upon demurrer to the bill, it was *held,* that

(1) The plaintiff by the suit in effect sought instruction of the court as to what its rights relating to the steam and payment therefor would be if, upon the facts as alleged, it were determined to be, as it contended, a tenant at will entitled to the provisions for its benefit in the expired lease or, as it alleged that the defendant contended, to be holding over under the renewal clause, or to be a tenant at sufferance;

(2) The trial of the pending action at law must render discussion of two of the possible but inconsistent conclusions of law to be drawn from the existing facts merely moot;

(3) Until the plaintiff's rights thus should be determined, it was not entitled to a decision by this court as to what its legal rights were with reference to the supply of steam for manufacturing purposes;

(4) Assuming the correctness of the plaintiff's contention, that it was a tenant at will holding over under an expired lease and with the benefit of the general terms and provisions thereof, it must pay a reasonable price for the steam it had used, for the determination of which an adequate remedy was furnished in the action at law;

(5) There was no such complicated account or fiduciary relation as would sustain equity jurisdiction for an accounting;

(6) As the issue of what was a reasonable price to be paid for the steam was properly triable in the action at law, no case was stated which entitled the plaintiff to have the prosecution of that action enjoined;

(7) The prayer for an injunction against the cutting off of the supply of live steam could not be granted since to do so would be to compel the defendant to supply steam, which he had made no express contract to do;

(8) In the circumstances, even assuming a tenancy at will to exist, a court of equity ought not to frame a contract embracing the many details as to the quantity, hours of service and price of the steam to be supplied, to compel its acceptance by unwilling parties, and enforce its performance by a landlord and tenant notwithstanding the fact that either of them at will could terminate the tenancy;

(9) The demurrer should be sustained.

BILL IN EQUITY, filed in the Superior Court on July 16, 1921, and afterwards amended, by the lessee against the lessor in a lease in writing described in the opinion, seeking the establishment of the rights of the parties under the lease "or otherwise;" that "the true measure of the plaintiff's liability for steam for heating purposes and live steam" furnished by the defendant be defined and determined; that an account be taken between the plaintiff and the defendant, and that the amount justly due from the plaintiff

to the defendant be determined; that the defendant be forever enjoined from further prosecution of an action at law against the plaintiff described in the opinion; that, pending the determination of this suit and until further order of the court, the defendant be forthwith enjoined from cutting off the supply of live steam for the plaintiff in connection with the premises occupied by it or from in any manner interfering with its quiet enjoyment of the premises and of the supply of live steam incident thereto; and that, whether or not the defendant be enjoined from prosecution of the action at law, an injunction as prayed for in the preceding prayer be made permanent or continued for such period and upon such terms as the equities of the parties may require.

The defendant demurred to the bill in substance upon the grounds of want of equity and that the plaintiff had an adequate remedy at law. The demurrer was heard by *Hammond,* J., who ordered it sustained and, being of opinion that such order so affected the merits of the controversy that, before further proceedings, the matter ought to be determined by this court, reported the question of the correctness of his decision to this court for such determination.

*J. G. Palfrey,* for the plaintiff.

*A. H. Wellman,* (*S. H. Wellman* with him,) for the defendant.

DE COURCY, J. The trial judge sustained the defendant's demurrer to the plaintiff's bill of complaint, and reported to this court the question of the correctness of his decision.

In substance the bill alleges the following facts: The plaintiff, a corporation engaged in the manufacture of tanning extracts and other similar preparations, has leased and occupied a building of the defendant for several years. During the entire time of the tenancy the defendant has furnished all steam for heating the leased premises and live steam for power and other purposes. In the lease dated December 1, 1915, it was provided that the supply of steam for heating should be included in the yearly rental of $2,000, and that the lessee (plaintiff) should purchase live steam of the lessor at certain definite rates per one thousand pounds. The next and last lease was executed on February 26, 1920, for a term ending March 1, 1921. It contained this provision: "And the Lessee further covenants and agrees to purchase from the Lessor, all water, steam, heat, gas and electricity, elevator service, transportation service, and any other service

required or used by the Lessee and rendered by the Lessor, other than the use of floor space, and to comply and cause its officers and employees to comply from time to time with any and all customary or reasonable regulations made by the Lessor for or in relation to the management of said building or buildings." In September, 1920, the lessee continuing in occupancy, the parties began negotiations for a renewal of the lease. The lessor forwarded the proposed new leases, corresponding substantially with the terms of the existing one, but incorporating a service at cost system of payment for live steam and heat. No agreement was reached, and no new lease was executed: and after several months the plaintiff informed the defendant that it did not desire to renew. In June, 1921, the defendant brought an action at law to collect the amount claimed to be due for rent and other charges, and the plaintiff paid all the charges then due except those for live steam and steam heat. These last were disputed as unfair and unreasonable. The defendant then threatened to discontinue supplying steam; and offered the plaintiff the use of a boiler, so that the latter might operate its own steam plant. Thereupon the plaintiff brought this bill in equity, praying that the rights of the parties under the lease, and the measure of the plaintiff's liability for steam be determined; that an accounting be had; that the action at law be enjoined; and that the defendant be prohibited from cutting off the supply of live steam.

The claim of the plaintiff is that it is a tenant at will, and that as such it has a legal right to require of the defendant a supply of steam for industrial and heating purposes. In support of this contention it presents an elaborate brief of the law of appurtenances and implied grants of easements as well as of implied covenants or contracts. The bill further alleges that the defendant claims there has been an extension of the lease for three years from March 1, 1920, under the renewal option, and that it (the defendant) is entitled to a formally executed lease in accordance with this extension. A third possible legal effect of the alleged transactions between the parties, and the one naturally to be inferred from the face of the bill, is that the plaintiff is merely a tenant at sufferance: and plainly entitled to no relief. In *Edwards v. Hale*, 9 Allen, 462, it was held that a tenant under a written lease who holds over after the expiration of his term is, in the absence

of any agreement to the contrary, a tenant at sufferance; and does not become a tenant at will by virtue of stipulations in the lease on the subject of holding over. As was said by *Field*, J., in *Porter* v. *Hubbard*, 134 Mass. 233, 238: ". . . permission merely by the landlord to a tenant at sufferance to occupy, does not create a tenancy at will. There must be an agreement shown, whereby the one agrees to hold, and the other to permit him to hold, the possession of the premises." See also *Emmons* v. *Scudder*, 115 Mass. 367, 372. Such tenancy at sufferance undoubtedly can be converted into a tenancy at will by the implied agreement of the parties, the existence and terms of which may be inferred from their conduct. *Benton* v. *Williams*, 202 Mass. 189. *Leavitt* v. *Maykel*, 203 Mass. 506.

In this bill in equity the plaintiff in effect, seeks the instruction of the court as to what its legal rights would be under each of these possible but inconsistent conclusions from the alleged facts. The trial of the pending action at law must render the discussion of two of them merely moot, even assuming that all the facts bearing on the third are disclosed in the bill. Until it shall be determined whether the plaintiff is a tenant under the lease extended for an additional term, or a tenant at will holding over under an expired lease, or a tenant at sufferance, it is not entitled to our decision as to what its legal rights are with reference to the supply of steam for manufacturing purposes.

The actual controversy between the parties is as to the price to be paid for the steam heat and live steam furnished by the defendant. Assuming the correctness of the plaintiff's claim, that it is a tenant at will, holding over under an expired lease and with the benefit of the general terms and provisions thereof, it must pay a reasonable price for the steam it has used. That amount can be adequately determined at law, without resorting to equity. There is no such complicated account or fiduciary relation as would sustain equity jurisdiction for an accounting. *Badger* v. *McNamara*, 123 Mass. 117. *Brown* v. *Corey*, 191 Mass. 189. And as the issue of what is such reasonable price is properly triable in the pending action at law, no case is stated which entitles the plaintiff to have the prosecution of that action enjoined.

While the bill in form prays for an injunction against the cutting off of the supply of live steam, what it really seeks is the specific

performance of an alleged contract to manufacture steam for the plaintiff. No such express contract is alleged. It appears that under an earlier lease the defendant contracted to supply and the plaintiff to purchase live steam at certain definite rates, which were increased from time to time by agreement. The lease of February 26, 1920, omitted these provisions, and the lessee agreed therein merely to purchase the enumerated services supplied by the lessor. This omission presumably was due to the failure of the parties to come to an agreement satisfactory to both. In these circumstances a court of equity ought not to frame a contract embracing the many details as to the quantity, hours of service and price of the steam to be supplied, to compel its acceptance by unwilling parties, and enforce its performance by a landlord and tenant notwithstanding that either of them can terminate the tenancy at will. *Giles* v. *Dunbar,* 181 Mass. 22. *Pray* v. *Clark,* 113 Mass. 283. *Leighton* v. *Ricker,* 173 Mass. 564. *Cummings* v. *Perry,* 169 Mass. 150. *Adams* v. *Messinger,* 147 Mass. 185, 190. *D. W. Watkins & Co.* v. *Greene,* 22 R. I. 34.

The demurrer to the amended bill was sustained rightly.

*Decree accordingly.*