Riley, J.
These two actions of tort were tried together. The Report states there is no question that the defendant *254 Perry was the servant of the defendant Allen Cadillac Co. and when the word “defendant” is used in the Perry Report, except in the pleadings, it means the Allen Cadillac Co.
The Declaration in each case alleg’es the plaintiff, on or about the 27th day of May, 1937 was lawfully on the property of the Allen Cadillac Co. in the City of Springfield and that on said date the defendant so carelessly and negligently drove, operated and controlled an automobile as to cause the same to run into and collide with the plaintiff, resulting in injury to him.
The defendant’s answer in each case is a general denial, contributory negligence of the plaintiff, an allegation that at the time of the alleged accident the automobile in question was not being operated by and was not under the control of a person for whose conduct the defendant was legally responsible and the further allegation that the plaintiff assumed the risk of injury.
'The evidence offered at the trial is recited in both Reports. as follows: “The Third National Bank and Trust. Company is the owner of a brick building on the corner of Belmont Avenue and Locust Street in Springfield. It is a two story affair. On the ground floor is the defendant’s salesroom,, on the second floor is its repair shop'. Belmont Avenue is to the west and Locust Street is to the north. Entrance to the repair shop leads off Belmont Avenue at. the southerly or rear end of the building by a runway or ramp which rises to the level of the second floor and turns: northerly into the building. Southerly of the building is a space into which ears may be backed out of the repair shop and parked. This is the only automobile entrance to the repair shop and cars came in and went out of the shop at all times of the day as occasion demanded. The defendant is a tenant at will of the entire premises. There *255 is no written agreement or arrangement between the parties, the only agreement being an oral one concerning the amount of rent which is paid monthly.
The Bank had undertaken to paint the outside woodwork of the building and the work had been in progress for a day or two prior to this accident. There was no testimony of any arrangement or agreement between the defendant and the Bank or that any permission to do this work was given by the defendant. No work was being done or to be done on the inside of the building’. The plaintiff for some time back had been in the general employ of the Bank as a working foreman having immediate charge of the painting of the various properties owned by it. He had been working on the outside of this building for three or four days. On May 27, 1937, the day in question, he had placed a six foot stepladder outside this entrance to the repair shop and was on about the fifth step actually engaged or about to engage in painting the cornice on the building outside the door. He had been there about half a minute or so when the accident occurred. He testified he heard no horn and was paying no attention to any automobiles at the time. Perry, the servant of the defendant, had been working on an automobile and was about to move it from one position in the work shop to another. When he got into it, it was facing east on the easterly side of the door. He got into the seat at the left, backed it up very slowly looking out towards the left to avoid running into a show case which extended northerly from the west side of the doorway. If he had looked through the rear view mirror he could have seen the plaintiff. The operation was not intended to place the automobile in the parking place outside of the repair shop. Perry was going back just far enough to allow him to straighten out enough to drive it northerly to another position in the repair shop, then put another automobile *256 immediately in the position from which the automobile involved in the accident had been. Perry did not know that the plaintiff was there, but he did know that painters were working around the building. At the time he started this operation Perry did not know that the plaintiff was intending to occupy this position. Just as he was coming to a dead stop, preparing to go forward he came in contact with the ladder causing the plaintiff to fall. The impact was very slight. Plaintiff was in the hospital from May 27th to June 9th. He was out of work for about eight weeks and then resumed his duties, except that he only worked actually for about half a day. During the time that he was out he was paid in full his regular wages of thirty-five dollars ($35.) a week, and after he went back to work he was paid his regular wages in full to the date of the trial, February 24, 1938. This payment during the time he was out was in accordance with a custom of the Bank.”
The defendant duly filed in both cases the following Requests :
“1. Upon all the evidence the plaintiff cannot recover for that—
(a) There is no evidence sufficient to warrant a finding that the defendant was negligent.
(b) The defendant was guilty of contributory negligence.
(c) The plaintiff cannot recover unless the defendant was guilty of wilful, wanton and reckless misconduct, and the defendant was not guilty of such.
(d) The plaintiff assumed the risk of injury.
2. If the plaintiff was entitled to a certain compensation per week whether he actually worked or not and did so receive it.
*257 (a) There can be no recovery for any compensation for lost time:
(b) There was no loss of earning capacity to this day Feb’y 24, 1938 for which damages may be recovered.
3. There has thus far been shown no loss of earning capacity for which the plaintiff can recover anything.”
In each case the trial judge found for the plaintiff and filed the following “Findings of Fact and Treatment of Bequests for Bulings”:
“The plaintiff an employee of the Third National Bank of Springfield, owner of the premises in which the defendant was a tenant at will, while engaged in painting a cornice just over the outside entrance leading into the defendant’s repair shop, was knocked off a stepladder by the negligent backing up. of an automobile, which was being moved, in the regular course of business of defendant, from one portion of the premises to another by an employee of the defendant, who failed to see the plaintiff at the moment, but who knew that plaintiff and other employees of the Bank were working on the premises. The act was one of simple negligence and not of willful or wanton conduct.
There was no direct evidence as to whether the painting was being done at the request of the defendant, or as to whether the defendant had even given the Bank permission to enter to do the work.
The question arises whether the plaintiff was an invitee or licensee. If the latter, even though the negligence is affirmative and not passive, he could not recover O’Brien vs. Union Freight Railroad Co., 209 Mass. 449 ('See the comment on page 456 regarding the case of Corrigan vs. Union Sugar Refinery, 98 Mass., 577, where it is said that that case perhaps may stand upon the ground of intentional or reckless injurious acts. See also the cases cited on *258 Pages 452 to 456, relating to affirmative negligent acts carried on in the usual course of the defendant’s business on the latter’s premises.)
Despite the lack of testimony as to the exact circumstances leading up> to the presence of the Bank’s servant engaged in improving the premises, it is, it would seem an inescapable conclusion, in the absence of other evidence, that he was not there against the will of the defendant, and a most reasonable inference that he was there for the mutual benefit of the Bank and of the defendant.
It may fairly be said that the defendant had “a beneficial interest in the purpose for which the plaintiff was on its premises” and that the plaintiff had “a right to claim as a duty owed to him that reasonable care should be used to furnish premises in a safe condition to admit the carrying out of the common purpose.” Statkunas vs. L. Promboin & Sons Inc., 274 Mass. 515, 519. The defendant is, therefore, liable to plaintiff for simple negligence.
'The plaintiff suffered very severe lacerations inside the mouth, which required surgical treatment, and which have had serious and probably permanent results. He also received two fractured ribs and other lesser injuries. In about sixty days he returned to his duties as foreman of painters for the Bank, but has since devoted only half days to the same, and can no longer climb ladders, as he becomes dizzy. The right corner of his mouth and part of his face are numb, He is seventy-one years of age. He is now unable to eat course food because of the injuries of the inside of his mouth. He received his usual wages from the Bank during his absence, although he did not have a right to demand it. He is receiving the same wages now, even though he works but one-half the usual day. He is worth what he is receiving to this particular employer,, *259 and there is no real loss of earning power as such up to now in his case, but there is a loss of his physical capacity, which would result in loss of earning power to another job. He has some impairment of motion of his right leg, but it cannot be fairly concluded that this was due to his accident.
Plaintiff’s request for rulings treated as waived in view of the finding.
Defendant’s request for ruling No. 1 was denied. No. 2A was denied as it is found that the plaintiff was not entitled to pay whether he worked or not. No. 2B was denied and No. 3 was denied.
The cases are reported by the trial judge at the request of the defendants who claim to be aggrieved by his rulings and findings and by his refusal to rule as requested.
The judge was not required to give the defendant’s second and third requested rulings. Both Requests 2A and 2B are predicated upon the first sentence of the Request “If the plaintiff was entitled to a certain compensation per week whether he actually worked or not and did so receive it”. The Request 2A was denied by the court on the ground that he found as a fact that the plaintiff was not entitled to pay whether he worked or not. Requests 2B and 3 were denied without comment.
Whatever lingering doubt may have existed by reason of the citation of cases from other states in the opinion in Donoghue vs. Holyoke Street Railway, 246 Mass. 485, as to the right of a plaintiff in a tort case to recover for impairment of earning capacity by reason of his injuries, whether or not he has received compensation from his employer during the period of disability caused by his injury, has been effectively set at rest by the decision in Shea vs. Rettie, 287 Mass. 454. The plaintiff in such a case is entitled to damages for the impairment of his earning capacity. The fact that he has lost his wages or salary from his employ *260 ment during* such time is evidence to be considered in measuring the impairment of his' earning capacity but his loss of such wages or salary is not recoverable as such. Braithwaite vs. Hall, 168 Mass. 38. Chelsea Moving & Trucking Co. Inc. vs. Ross Towboat Co., 280 Mass. 282 at 285 and cases cited. He may even recover for such loss of working capacity although no evidence as to his wages or salary is introduced. Cross vs. Sharaffa, 281 Mass. 329 Speaking of the liability of a defendant to respond for damages in an action of tort, our Supreme Court in Shea vs. Rettie, 287 Mass. 454, 458, says, “The duty imposed by law upon him is to compensate the plaintiffs for all the damage done by his negligence, including* impairment of earning capacity. That obligation is not fulfilled because it happens that the plaintiffs have a contract with the city which entitles them to be indemnified by disability payments during absence from duty. Compensation for the defendant’s wrong is not thereby furnished by the defendant. Such payments by the city do not concern and should not benefit the defendant. They have no bearing on his liability or upon the extent of the plaintiffs’ injuries nor do they afford a measure of the plaintiffs’ working* capacity during their disability. The fact that such payments were made and their amount were rightly disregarded by the judge in estimating the plaintiffs’ damages.”’ And again at page 459 “Where, as in this Commonwealth* recovery is had against a tortfeasor for impairment of capacity to labor and not for wages as such, we see m> ground for distinguishing between payments received, as of right and those received as a gratuity.”
Upon the facts found by the trial judge, the defendant was clearly not entitled to his third requested ruling that there had thus far been shown no loss of earning capacity for which the plaintiff can recover anything. It was found *261 that the plaintiff was confined to the hospital from May 27th to June 9th, that he was out of work for eight weeks and then resumed his duties except that he only actually worked for half the usual day, and that he was suffering from dizziness and that the corner of his mouth and part of his face were numb. This is so notwithstanding the erroneous use of the term “earning power” by the judge in his finding to the effect that there is no real loss of earning* power as such up> to now in this case but there is a loss of physical capacity which would result in loss of earning power to another job. Obviously the judge, upon the facts found, confused the words “earning power” with “earnings”. As before pointed out, recovery is to be had, not for loss of earnings but for loss of earning* power or capacity and it is not controlling that during* the period of inability to perform his duties a plaintiff receives compensation in full or in part from his employer or some other source. The defendant is entitled to show that there was' no loss of earning capacity upon the part of the plaintiff but is not entitled to reduce the amount for which he is liable in damages by reason of compensation received as of right, by virtue of a contract or as a gratuity from some other source.
The refusal of the defendant’s first request, that upon all the evidence the plaintiff cannot recover, accompanied by specifications setting out the reasons for such request, raises the novel question of the right of an employee of a landlord to recover for the negligence of a tenant at will and his employee upon the premises let by the landlord to such tenant. Counsel for the parties have called to our attention no case in this Commonwealth or elsewhere covering this precise question. Whatever may be the law in other jurisdictions (see Am. Law Inst. Eestatement: Torts, *262 Section 329D) it was held in Dickinson vs. Goodspeed, 8 Cush. 119, after very deliberate consideration, that until the term for which a tenancy at will is given has expired, the lessee at will has a lawful and exclusive possession, not only as against a stranger but also against the lessor at will, and that a servant of the landlord entering upon the premises let without authority of the tenant at will is a trespasser. This principle has been re-affirmed without qualification in Hilbourn vs. Fogg, 99 Mass. 11, 12, and Porter vs. Hubbard, 134 Mass. 233, 238, and approved in Sheehan vs. City of Fall River, 187 Mass. 356, 360. It seems to have been assumed in Maloney vs. Hayes, 206 Mass. 1, 3, and cases cited, that a lessor, either by paroi or by a lease, has no right to enter upon the premises let to make repairs unless he has reserved such right. The court says, pages 2 and 3, “If during the tenancy the defendant voluntarily painted and shingled the house, no retention of control of the premises for the purpose of making repairs or ascertaining their condition is shown, and the tenant had the right of possession and enjoyment of the estate.” It was said in Kearines vs. Cullen, 183 Mass. 298, 300, as between the landlord and tenant at will, a house let to such tenant was his house. If it be assumed that a landlord has a right to enter upon premises let by a tenancy at will to prevent waste, it is expressly found by the judge that there was no evidence of waste. The plaintiff in this case stands in the same relation to the defendants as his employer, the landlord. Dickinson vs. Goodspeed, 8 Cush. 119. This is in accordance with the familiar rule applied as to the rights of the employees of a lessee against the lessor upon premises let. Pittsley vs. Acushnet Saw Mills Go., Mass. A. S. (1938) 151, 152 and cases there cited. See also Harrington vs. Dorchester Fields Corner Storage Warehouse Co., Mass. A. S. (1937) 381, 384, 385 *263 and eases cited. Under the law as it now stands in this Commonwealth it seems that the plaintiff was not on the premises where he was injured as a matter of right by reason of the relationship of landlord and tenant between his employer and the defendant Allen Cadillac Co. He must, therefore, have been therq as a licensee or an invitee by express or implied invitation.
If he was a mere licensee he cannot recover against either defendant in the absence of proof of wilful and wanton conduct on the part of the defendant Cadillac Co. or the defendant Perry. Blaclcstone vs. Chelmsford Foundry Co., 170 Mass. 321, 322 and cases cited. Cole vs. Willcutt & Sons Co., 214 Mass. 453. Murphy vs. B. & M. RR., 248 Mass. 78, 81, 82 and cases cited. This is so even though the negligence of the defendants was affirmative and not passive. O’Brien vs. Union Freight Railroad Co., 209 Mass. 449. The trial judge found that there was no such wilful or wanton conduct.
He also found that there was no express invitation extended to him or no arrangement between his employer and the defendant Cadillac Co. in reference to the work in which the plaintiff was engaged at the time of his injury.
It remains to be decided whether the evidence warranted a finding that the plaintiff was on the premises of the defendant Cadillac Co. by an implied invitation from such company. Knowledge that he was there on the part of that company or its employees does not amount to an invitation. Mere passive acquiescence in his presence there was not equivalent to an invitation. Murphy vs. B. & M. RR., 248 Mass. 78, 81 and cases cited. While the evidence shows that the plaintiff had been working upon the premises of the Cadillac Co. for two or three days, it does not show that anyone in authority in that company was aware *264 of his presence or had consented to his being there doing the work in which he was engaged. The judge found that the defendant Perry did not know that he was in the doorway when he was injured, although he did Imow that painters had been at work around the building. There seems to have been no evidence that the defendant corporation or the defendant Perry assented to the work being done by the plaintiff.
In reference to this the judge found, “Despite lack of testimony as to the exact circumstances leading up to the presence of the bank’s servant engaged in improving the premises, it is it would seem an inescapable conclusion in the absence of other evidence that he was not there against the will of the defendant, and a most reasonable inference that he was there for the mutual benefit of the bank and of the defendant. It may fairly be said that the defendant had ‘a beneficial interest in the purpose for which the plaintiff was on its premises’ and that the plaintiff had ‘a right to claim as a duty owed to him that reasonable care should be used to furnish premises in a safe condition to admit the carrying out of the common purpose’. Statkunas vs. L. Promboin & Sons Inc., 274 Mass. 515, 519. The defendant is therefore liable to plaintiff for simple negligence.”
As above pointed out, it is not enough that the defendants did not object to the plaintiff’s presence upon the property and even their acquiescence in his presence there • for the purpose in which he was engaged, does not make him an invitee. Murphy vs. B. & M. RR., 248 Mass. 78. In order to recover, the plaintiff must show that he was upon the premises by express or implied invitation. Without any evidence as to circumstances leading up to his presence there as stated by the trial judge in his finding, we do *265 not think that his inference and finding that the plaintiff was there for the mutual benefit of the bank and the defendant was warranted. The defendant Cadillac Co. was a tenant of the entire premises, which consist of a brick building and surrounding land, part of which was used for parking places. The plaintiff was engaged in the rather inconsequential work, as far as the condition of the building was concerned, in painting the outside woodwork of the building, which, by virtue of its brick construction, could have consisted only of window cases and sashes and the decorative wooden part of the building. As a tenant at will the defendant Cadillac Co., which was conducting an automobile salesroom and repair shop in the two story building, could not have been materially benefited in the painting which was being done. It had no tendency to enhance the value of the premises as far as the defendant Cadillac Co. was concerned or to improve its use for the purposes for which it had hired it. It is not as if the inside of the building was being painted or, indeed, as if the entire outside of a wooden building was being decorated and preserved with paint. In Statkunas vs. L. Promboin & Sons, Inc., 274 Mass. 515, 519, relied upon by the plaintiff and the trial judge, the defendants had assumed the duty of keep^ing the clothesline in order and had permitted its employees to fix it from time to time so that it was found that when the plaintiff came upon the defendant’s premises to seek to have the clothesline fixed again, it was for a purpose in which the defendants had an interest. In the case at bar, the defendant Cadillac Co. had not been consulted in reference to the work which was being done by the plaintiff and, as far as the evidence goes, did not through any of its responsible agents even know that the plaintiff was upon the premises. While the defendant Perry knew there were painters around the building, there is nothing to *266 show that he knew by whom they were employed or what they were doing. With some hesitation we are constrained to hold that the evidence did not warrant a finding for the plaintiff. A like result has been reached in somewhat similar cases in other jurisdictions — Forsythe vs. Shryach-Thom Grocery GC., 283 Mo. 49, 10 A. L. R. 711 and cases collected on page 715.
The conclusion reached may seem harsh in view of the apparent innocence of the plaintiff as to his status upon the premises of the defendant Cadillac Co. However, there are certain risks which an employee of a contractor assumes upon premises of another upon which he goes to work, Pilling vs. Hall, 251 Mass. 425, 426, 427 and cases cited, and it might be thought equally as harsh to hold the defendant Cadillac Co. liable for the negligence of its employees toward one upon its premises without its actual knowledge or consent, simply on the ground that that person was doing work which might conceivably be of some infinitesimal benefit to it.
Counsel have assumed that if the plaintiff could not recover against the defendant Cadillac Co. he was not entitled to recover against the defendant Perry, as Perry was an agent of the Cadillac Co., engaged within the scope of his employment with it at the time his alleged negligence injured the plaintiff. We think that their assumption is correct. Giedrewics vs. Donovan, 277 Mass. 563 and cases cited.
It results that in each case the finding for the plaintiff must be vacated and a finding for the defendant entered.