Wexler, James H., J.
Plaintiff, Batesville Casket Company, Inc. (“Batesville”), brought this action against defendants, Merlin Enterprises Realty Trust (“Merlin”) and Cutler Real Estate Management Corp. (“Cutler”), for recovery of the conversion of $19,987.50 that was allegedly paid in error after its lease term had expired. Defendants filed a counterclaim contending that once the lease had expired Batesville became a tenant at sufferance and then a tenant at will was established by Batesville’s payment of rent and renewal of the insurance policy for the premises. Bates-ville contends that payment does not constitute such an agreement. Rather Batesville asserts that payment was merely made in administrative error as a result of solicitation by defendants and, therefore, the funds should be returned. After a non-juiy trial and based upon all the credible evidence and the reasonable inferences that I may draw from that evidence, the court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
Merlin is the lessor and owner of the leased premises located at 400 Grove Street in Worcester, Massachusetts (“the premises”). Cutler is the property manager of the premises and, as such, manages the invoicing and collection of rental payments from tenants. Batesville is an Indiana corporation licensed to do work in Worcester County, Massachusetts. Batesville’s administrative office is located in Bates-ville, Indiana.
On April 15, 1993, Batesville entered into a lease agreement of the premises with Merlin. The lease was for a term of two years from April 15, 1993 to April 14, 1995. Batesville claims that on or about April 12, 1995 the premises were vacated and that John Brunell, a Batesville employee, returned the keys to the office of Ronald Chase, trustee of Merlin. Defendants deny that Batesville ever returned the keys, claim that they had no indication that Batesville had vacated the premises, and claim that Batesville had property on the premises after that date.
Upon expiration of the lease, Merlin, through its agent Cutler, continued to send monthly invoices for rent to Batesville’s administrative office in Batesville, Indiana. Batesville paid the invoices for the next five and a half months.[1] In addition, in May of 1995, Batesville’s administrative office renewed the insurance policy for the premises in response to a request for proof of insurance sent from Merlin on May 10, 1995.
On October 12, 1995, Melanie D. Riehle, agent of Batesville, sent a letter to defendants requesting a refund of $19,987.50[2] claiming that the premises had been vacated prior to the expiration of the lease and that these payments were made in error. In response to this request on October 24, 1995, Ronald Chase, trustee of Merlin, sent a letter stating in pertinent part
As of this date, I still have not received formal notice of your intent to vacate the space at 400 Grove Street, Worcester. Your letter states that we received the return of keys to your space is totally untrue. My secretary nor myself never received these keys that you so mention . . . Your logo still hangs in the lobby of the building as of this date. Your logo and sign still hangs embossed on the window adjacent to the spot you occupied, none of which were ever removed . . . Should you desire to terminate the space, a 30 day notice is required.
(Exhibit 10: Letter (handwritten) from A. Ronald Chase of Merlin to Batesville, October 24, 2005.)
Batesville brought suit seeking return of $19,987.50, claiming that this amount was mistakenly paid after the lease term ended. Batesville argues that its obligation of rent ended when the lease term ended because it did not act on the option to extend[3] and because it surrendered according to the terms of the lease. The provision in the lease for surrender states in pertinent part that:
The LESSEE shall at the expiration or other termination of this lease, remove all LESSEE’S goods and effects from the leased premises, (including ... all signs and lettering affixed or painted, by the LESSEE, either inside or outside the Leased premises). LESSEE shall deliver to the LESSOR the leased premises and all keys . . .
*341 (Lease §21.) Defendants argue that Batesville did not surrender according to the lease because the keys were never returned and because Batesville left personal property[4] on the premises, both leading defendants to infer that Batesville was holding over. Defendants further contend that Batesville’s payment of rent and renewal of insurance indicated an implied agreement of a tenancy at will. Defendants seek payment of rent for the months beginning October of 1995 through July of 1996, when Batesville formally vacated the premises.[5]
RULINGS OF LAW
I. SURRENDER OF LEASED PROPERTY
To demonstrate surrender, there must be evidence of a meeting of the minds between the landlord and tenant, and the intent of the landlord to accept the surrender must be clearly shown. Cassidy v. Welsh, 319 Mass. 615, 618-19 (1946). The burden of proving the surrender, and thereby the landlord’s acceptance of the premises, is on the tenant. See Caruso v. Shelit, 282 Mass. 196, 199 (1933) (tenant demonstrated surrender by showing that the landlord’s actions, including contracting for repairs, deprived tenant of use of the premises); see also Whitney v. Gordon, 55 Mass. 266, 269 (1848). The delivery and receipt of keys, standing alone, are insufficient to satisfy the tenant’s burden of proving surrender. See Cantor v. Van Noorden Co., 4 Mass.App.Ct. 819 (1976) (stating that the landlord’s receipt of keys from tenant was not sufficient to show an agreement of surrender). In contrast, acceptance of surrender of a lease may come about inferentially if a landlord exercises control over the property in a way that excludes the tenant, such as changing the locks. Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 221 (1992).
Batesville claims that the keys were returned to the defendant and that because the premises were vacated prior to the end of the lease term that it satisfied the terms of surrender provided for in the lease.[6] Defendants deny ever receiving the keys. However, even if the defendants had received the keys, this evidence would be insufficient to establish surrender because Batesville also paid rent and renewed the insurance policy.
Batesville also claims that because the lease provides the defendants with a remedy to address property left behind that leaving items behind is not a failure to meet the conditions of surrender. Batesville misunderstands the provision of the lease. The provision for surrender states that
The LESSEE shall at the expiration or other termination of this lease, remove all LESSEE’S goods and effects from the leased premises, (including ... all signs and lettering affixed or painted by the LESSEE, either inside or outside the leased premises). LESSEE shall deliver to the LESSOR the leased premises and all keys ... In the event of the LESSEE’S failure to remove any of the LESSEE’S property from the premises, LESSOR is hereby authorized, without liability to LESSEE for loss or damage thereto, and at the sole risk to LESSEE, to remove and store ... to sell at public or private sale . . . and to apply the net proceeds of such sale to the payment of any sum due hereunder, or to destroy such property.
(Lease §21.) The provision begins with two requirements of the lessee for surrender: removal of effects and deliveiy of keys. Following the requirements, the provision provides a remedy for the lessor in the event that the lessee fails to meet the requirement of removal of goods. The remedy in no way negates the requirement. Removal of effects is a requirement of surrender, one that Batesville fails to meet.
Batesville has failed to demonstrate that the defendants in any way accepted surrender of the premises. Batesville does not satisfy its burden because it fails to demonstrate both that the defendants were even aware of the premises having been vacated and that defendants excluded Batesville from the premises. The court finds that the defendants’ actions, including assuming Batesville was holding over, invoicing and accepting rent payments, and not seeking new tenants, were reasonable. Moreover, even if the court credited Batesville’s testimony that it had removed all of its possessions, the payment of rents defeat that claim.
II. TENANCY AT WILL
Under Massachusetts law, holdover, payment, and acceptance of rent do not necessarily constitute a renewal for another term, rather when a tenant holds over after the lease term expires, either a tenancy at will or a tenancy at sufferance results. Spodek v. United States Postal Sew., 35 F.Sup.2d 160, 165 (D.Mass. 1999). A tenancy at sufferance results when a tenant “merely continues to hold possession of the premises . . . and has made no contract as to the character of [his] occupancy” after the expiration of the lease term. Spodek, 35 F.Sup.2d at 165, quoting Ames v. Beal, 284 Mass. 56, 59 (1933). Tenants at sufferance are statutorily liable to pay rent for the time they occupy the property. Mass. Ann. Laws ch. 186, §3 (LexisNexis 2006). A tenancy at sufferance can convert into a tenancy at will “by the implied agreement of the parties, the existence and terms of which may be inferred from their conduct.” C.A. Spencer & Son Co. v. Merrimac Valley Power & Building Co., 242 Mass. 176, 180 (1922); see Jones v. Webb, 320 Mass. 702 (1947). The consent of both parties is required for conversion of an existing tenancy to a tenancy at will. Maguire v. Haddad, 325 Mass. 590, 593 (1950). This consent may be express or implied. Williams v. Seder, 306 Mass. 134, 136 (1940); see also Newman v. Sussman, 239 Mass. 283 (1921). In Staples v. Collins, the court stated that
payment and acceptance of rent, standing alone, are prima facie proof of the creation of a tenancy at *342 will . . . and that the facts of payment and acceptance are controlling, if nothing further appears.
321 Mass. 449, 451 (1947). See T.W. Nickerson, Inc. v. Fleet Nat’l Bank, 2004 Mass.Super. Lexis 164 (2004) (stating that tenant became a tenant at will upon lessor’s continued acceptance of tenant’s rental payments) .
Defendants properly concluded that Batesville was not surrendering the property based on the provisions for surrender in the lease agreement. The reasonableness of this conclusion is evident by their sending the rent invoice and the request for proof of insurance to Batesville and Batesville’s payment of rent and renewal of the insurance policy. As a result of their reliance on Batesville’s tenancy at will, the defendants did not make any effort to seek out new tenants. Even if the space had been completely empty of effects and even if the keys had been returned, Batesville’s payment of rent still indicates that they had not surrendered the premises.
The court finds that a tenancy at will was created. Therefore, Batesville’s claim for return of the rent payments is denied because there was no conversion of funds. The court also finds no violations of Mass. G.L. ch. 93A on the part of the defendant. The defendants’ solicitation of rent and proof of insurance do not constitute unfair or deceptive acts, rather these actions were logical steps based upon reasonable inferences. Furthermore, because defendants relied on plaintiffs tenancy to their detriment (not obtaining other tenants), the defendants were not unjustly enriched. Rather, the amount paid by Batesville covers their rent payments through the month of September 1995. Defendants may recover the rent due for the duration of the tenancy at will in the amount of $27,675.00.[7]
ORDER
Accordingly, for the reasons stated above, Batesville’s Count I for conversion of funds is DISMISSED. Batesville’s Count II for unjust enrichment is DISMISSED. Batesville’s Count VI for violations of Mass. G.L. ch. 93A is DISMISSED.[8] Further, defendant’s counterclaim for rent owed is GRANTED for the amount of $27,675.00.

The following is an accounting of the five and a half months’ rent referred to by Batesville as having been paid in error: Defendants received rent from Batesville for the months of May 1995 through September 1995, and Batesville paid for the whole month of April 1995, but claims to have only occupied the premises until April 12, 1995.

This amount reflects the total rent paid of the five and a half months referenced in footnote 1 plus an additional $3075.00 which was paid at the beginning of the lease term for “last month’s rent.”

The provision for the option to extend states in pertinent part that
The LESSEE shall have the option to extend this Lease Agreement for an additional term of two years by giving notice to the LESSOR as provided in SECTION 20 hereof not less than six (6) months before the expiration of the initial term hereof.
(Lease §23.) Both parties contend that Batesville did not exercise its option to extend. (Defendants’ Motion in Opposition to Batesville’s Motion for Summary Judgment, July 25, 1997.)

The items belonging to Batesville remaining on the premises in a storage closet include three wooden packing crates, one sheet of particle board, several sheets of plywood, and one cardboard box display. (Affidavit of Robert L. Lombard, November 20, 1996.) Defendants claim that Batesville also left signs on the property. (Douglas Cutler’s Answers to Plaintiffs First Set of Interrogatories, A#11, July 29, 1996.)

The months of rent that have not been paid by Batesville are calculated by the court as follows: October 1995 through July 1996 = 10 months x $3075.00 = $30750.00 - $3075.00 (which reflects the last month’s rent that was paid at the beginning of the lease term) = $27,675.00.

Lease §21 discusses the requirements of surrender, which include removal of effects and delivery of keys. The lease is silent in regards to notice of termination or surrender.

The months of rent that have not been paid by Batesville are calculated by the court as follows: October 1995 through July 1996 = 10 months x $3,075.00 = $30,750.00 - $3,075.00 (which reflects the last month’s rent that was paid at the beginning of the lease term) = $27,675.00.

Counts III (Mutual Mistake), Count IV (Fraud), and Count V (Negligence) were dismissed without prejudice per stipulation of the parties. (Stipulation of Dismissal Without Prejudice, November 22, 2005.)